Deborah MARTZ, Plaintiff–Appellant,

v.

INCORPORATED VILLAGE OF VAL-
LEY STREAM; George Donley, Individ-
ually, and as Mayor of the Incorporated
Village of Valley Stream; Paul Brown,
Individually, and as Trustee of the In-
corporated Village of Valley Stream;
Michael Belfiore, Individually, and as
Trustee of the Incorporated Village of
Valley Stream; Thomas Williams, Indi-
vidually, and as Village Attorney for the
Incorporated Village of Valley Stream;
Nunzio Colombo, Individually, and as
Treasurer of the Incorporated Village of
Valley Stream; Joseph W. Gathard, as
Trustee of the Incorporated Village of
Valley Stream; Rosario Messina, as
Trustee of the Incorporated Village of
Valley Stream, Defendants–Appellees.

No. 950, Docket 93–7785.

United States Court of Appeals,
Second Circuit.

Argued Jan. 12, 1994.

Decided April 7, 1994.

Elliot I. Susser, Lake Success, NY (Lysaght, Lysaght & Kramer, P.C., Lake Success, NY, of counsel), for plaintiff-appellant.

Kenneth Novikoff, Uniondale, NY (Evan H. Krinick, Rivkin, Radler & Kremer, Uniondale, NY, of counsel), for defendants-appellees.

Before: MINER, MAHONEY, Circuit Judges, and RESTANI,[*] Judge.

MINER, Circuit Judge:

Plaintiff-appellant Deborah Martz appeals from a summary judgment entered on July 14, 1993 in the United States District Court for the Eastern District of New York (Spatt, J.), in favor of defendants-appellants the Incorporated Village of Valley Stream, George Donley, Paul Brown, Michael Belfiore, Thomas Williams, Nunzio Colombo, Joseph W. Gathard and Rosario Messina ("Village", collectively) and dismissing Martz's complaint, brought pursuant to 42 U.S.C. § 1983, in its entirety. The district court found that (1) the Village's alleged breach of a contract with Martz in not paying her for professional services rendered did not constitute a deprivation of a property interest protected by the Fourteenth Amendment, and (2) alleged defamatory statements attributed to the Village and first published in a local newspaper approximately six months after the expiration of Martz's one-year term of appointment as Deputy Village Attorney did not deprive her of any liberty interest protected by the Fourteenth Amendment.

For the reasons that follow, the judgment of the district court is AFFIRMED.

## BACKGROUND

In April of 1985, Martz was appointed by the Board of Trustees of the Village to a one-year term as Deputy Village Attorney for the Village's Board of Zoning Appeals ("BZA"). The original resolution[1] appointing Martz

---

[*] Honorable Jane A. Restani of the United States Court of International Trade, sitting by designation.

1. Subsequent resolutions were passed re-appointing Martz to the position of Deputy Village Attorney. As discussed herein, this relationship continued until April 1, 1991.

provided that she was to be paid an annual retainer to attend a specified number of meetings and public hearings of the BZA, prepare all written decisions of the BZA and prepare all written interpretations of the Village Zoning Code. A separate resolution empowered the Board of Trustees to contract with Martz to perform additional legal services on a case-by-case basis. This resolution also provided that she would be compensated at a fixed hourly rate and required Martz to submit verified written vouchers before receiving payment.

Early in 1988, Martz was directed by the Board of Trustees to begin drafting a new Zoning Code and was asked to wait until the project was completed before requesting payment. Although the new Zoning Code was passed in September of 1990, the Board of Trustees asked Martz to continue to work on minor revisions. In March of 1991, the Board of Trustees suggested that she submit her final bill for services rendered. Accordingly, Martz submitted verified written vouchers to her supervisor, Michael Hopkins. These vouchers totaled $40,220.00 for services provided in connection with Martz's drafting of the Zoning Code and for other BZA–related services. The vouchers then were signed by Hopkins and the members of the Board of Trustees and given to the Village Treasurer.

On April 1, 1991, a new mayor and three new trustees took office, having been elected on March 19, 1991. Martz's term as Deputy Attorney expired on April 1, and she was not re-appointed. Martz did not contest the failure to re-appoint. In mid-April, having not yet received payment for her work on the Zoning Code, Martz telephoned the Village's payroll department to check on the status of her vouchers. She was told that the vouchers had been picked up by the new Village Attorney, Thomas Williams. The Village continued to withhold payment and, on August 5, 1991, a resolution to pay Martz (submitted by the two incumbent Trustees) was defeated by a three-to-two vote of the Village Board. According to the Village, Martz was refused payment because the vouchers were viewed as being submitted and approved under extraordinarily suspicious circumstances.

Several vouchers described services allegedly rendered over one year prior to their submission without any evidence of a resolution or contract authorizing Martz's services and without any corresponding budgetary appropriation. Other vouchers allegedly had been verified on March 15, 1991, but included time entries for work to be performed in the future.

On September 19, 1991, almost six months after Martz's appointment had expired, a local weekly newspaper, the *Valley Stream Maileader*, published a letter to the editor from Village Attorney Williams responding to an earlier letter from a Valley Stream citizen that discussed the number of lawsuits filed against the Village during the new administration's tenure. In the letter, Williams stated that it was his opinion, and the opinion of other lawyers with whom he had consulted, that Martz had committed malpractice by allowing a default judgment to be entered against the Village in a case that she had handled during her tenure. Williams' comments also suggested that he had only recently learned about the alleged malpractice. The article, however, did not include any statement by Williams concerning the Village's decision not to re-appoint Martz six months earlier.

On August 1, 1991, Martz had commenced an action in the New York Supreme Court, Nassau County (DiNoto, *J.*), against the Village. The complaint set forth causes of action for restitution and breach of contract, both based on the Village's failure to pay for the services described in the vouchers. Martz sought damages in the amount of $40,-220 on each cause of action. In December of 1992 the Village moved for summary judgment dismissing the complaint, arguing that Martz had failed to comply with section 9802 of the Civil Practice Law and Rules by neglecting to file a verified claim with the village clerk within one year after the accrual of the cause of action. N.Y.Civ.Prac.L. & R. § 9802 (McKinney 1981). In an April 21, 1993 decision, the court granted the Village's motion to dismiss, finding that Martz had failed to comply with the requirements of section 9802. In May of 1993, Martz moved for leave to renew and reargue the grant of

summary judgment, arguing that the submitted vouchers constituted the verified written claim necessary to maintain her action against the Village. By judgment dated July 24, 1993, the Supreme Court denied Martz's motion to renew and reargue.

On September 16, 1992, while her state court action was pending, Martz commenced the action that gives rise to this appeal. Her complaint referred to three separate occurrences that form the basis for the relief she seeks under 42 U.S.C. § 1983. They were (1) the rejection by the Village of its contractual obligations to pay Martz for professional services rendered in accordance with the vouchers submitted; (2) the defamatory comments made by Williams and published in the *Maileader* on September 19, 1991; and (3) the decision by the Village not to reappoint Martz to the position of Deputy Village Attorney after her one-year appointment had expired. Based upon these occurrences, Martz set forth four claims in her complaint.

In the first claim, she sought contract damages in the amount of $40,220. In the second claim, Martz complained of the deprivation by the Village of a protected property interest without due process of law, based primarily upon Williams' alleged defamatory remarks published in the *Maileader*. In her third claim, Martz alleged that the acts of the Village set out in her first two claims continued to deprive her of a protected property interest. In the fourth claim, Martz challenged the decision of the Village not to reappoint her, alleging deprivation of property and liberty without due process. Relying upon the district court's supplemental jurisdiction, Martz alleged state law tort claims as part of the fourth claim of her complaint.

On June 7, 1993, the Village moved for summary judgment dismissing the complaint, arguing that, even if the vouchers constituted an enforceable and binding contract, a breach of that contract did not constitute a deprivation of a property interest. The Village also contended that, even if the statements printed in the *Maileader* were actionable defamation, the fact that they were published six

months after the appointment of Martz expired precluded a finding that she had been deprived of a protected liberty interest.

By judgment entered on July 14, 1993, the district court granted summary judgment, holding that Martz had no constitutionally protected property right in payment on the vouchers or in re-appointment as Deputy Village Attorney.[2] The district court also held that Martz had suffered no deprivation of a liberty interest as a result of the alleged defamatory statements because the statements did not occur in the course of her dismissal or in connection with the Village's refusal to rehire her. Having dismissed the federal causes of action, the district court dismissed the pendent state claims without prejudice. This appeal followed.

## DISCUSSION

### 1. *Property Interest*

Martz argues that the Village's failure to compensate her, pursuant to the submitted vouchers, for services rendered gives rise to a cognizable claim for damages under the provisions of 42 U.S.C. § 1983 because she has a protected property interest in the receipt of this payment. We disagree.

■ This case requires our inquiry into whether Martz possesses a contractual right that gives rise to a legitimate claim of entitlement resulting in a protected property interest. Property interests protected by due process are neither created nor defined by the Constitution. "Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

■ In order for a person to have a property interest in a benefit such as the right to payment under a contract, "[h]e must have more than a unilateral expectation

---

**2.** Martz apparently has abandoned any challenge to the decision of the district court regarding her re-appointment. This point was not briefed and

counsel neither raised nor referred to this issue in any way during argument.

of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* When determining whether a plaintiff has a claim of entitlement, we focus on the applicable statute, contract or regulation that purports to establish the benefit. *Kelly Kare, Ltd. v. O'Rourke,* 930 F.2d 170, 175 (2d Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 300, 116 L.Ed.2d 244 (1991). We note that although a public contract can confer a protectible benefit, not every contract does so, *Walentas v. Lipper,* 862 F.2d 414, 418 (2d Cir.1988), *cert. denied,* 490 U.S. 1021, 109 S.Ct. 1747, 104 L.Ed.2d 183 (1989), and the type of interest a person has in the enforcement of an ordinary commercial contract often "is qualitatively different from the interests the Supreme Court has thus far viewed as 'property' entitled to procedural due process protection," *S & D Maintenance Co. v. Goldin,* 844 F.2d 962, 966 (2d Cir.1988); *see also Walentas,* 862 F.2d at 418.

■ In this case, Martz argues that New York law provides her with a clear entitlement to payment for the services described in her vouchers. As support for her argument, she relies upon *White Plains Nursing Home v. Whalen,* 53 A.D.2d 926, 385 N.Y.S.2d 392 (App.Div.1976) (mem.), *aff'd,* 42 N.Y.2d 838, 397 N.Y.S.2d 378, 366 N.E.2d 79 (1977), *cert. denied,* 434 U.S. 1066, 98 S.Ct. 1244, 55 L.Ed.2d 768 (1978). That case, however, involved a claim for reimbursement of overpayments made to a Medicaid provider pursuant to a statutorily prescribed reimbursement rate. The property right recognized by the court in *Whalen* was grounded on the fact that the Medicaid provider "undertook to perform its nursing services in reliance upon the said rate and ha[d] received the money" pursuant to the statutory reimbursement rate. *Id.* at 394; *see also Oberlander v. Perales,* 740 F.2d 116, 120 (2d Cir.1984) (recognizing constitutionally protected property interest under similar facts).

Unlike the case of a Medicaid provider, the only right to payment in this case is predicated upon an alleged breach of contract, rather than a statutorily imposed reimbursement rate, and the Village merely has withheld payment in the first instance, as opposed to seeking divestment of monies already paid to Martz. Thus, Martz's reliance on *Whalen* is misplaced. Similarly, other cases cited by Martz are inapposite because they address situations in which an entitlement to benefits clearly was recognized in state law. *See, e.g., Kraebel v. New York City Dep't of Hous. Preservation & Dev.,* 959 F.2d 395, 404 (2d Cir.) (landlord had property interest based upon entitlement under state law to reimbursement of senior citizen rental income), *cert. denied,* — U.S. —, 113 S.Ct. 326, 121 L.Ed.2d 245 (1992); *Ezekwo v. NYC Health & Hosps. Corp.,* 940 F.2d 775, 783 (2d Cir.) (recognizing doctor's state-law property interest in becoming Chief Resident), *cert. denied,* — U.S. —, 112 S.Ct. 657, 116 L.Ed.2d 749 (1991); *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991) (concluding that New York's recognition of an implied contract between a university and its students provided a basis for constitutionally protected property interest); *J.O.M. Corp. v. Department of Health,* 697 F.Supp. 720, 724–25 (S.D.N.Y.1988) (where state regulations require hearing to be held prior to disqualification of plaintiff from federally funded program, plaintiff had protectible property interest in receiving hearing).

■ Perhaps recognizing the infirmity of her first argument, Martz also refers us to New York Labor Law sections 197, 198 and 198–a, as well as New York Judiciary Law section 475, as support for the proposition that she has a legitimate entitlement to the benefits of her contract with the Village. However, none of the provisions cited by Martz operate to confer the entitlement necessary for her success in this case. Labor Law section 197 deals solely with an employer's forfeiture of fifty dollars to the state if he fails to pay the wages of his employees. N.Y.Lab.Law § 197 (McKinney 1986). Section 198 merely provides employees with a mechanism to recover costs and expenses in connection with a successful litigation against an employer for failure to pay wages. *Id.* § 198. Labor Law section 198–a criminalizes an employer's failure to pay wages. *Id.* § 198–a. Furthermore, Judiciary Law section 475 is of no assistance to Martz. Section 475 establishes an attorney's charging lien and provides the mechanism for an attorney

to protect those assets of a former client which may provide him, after a "verdict, report, determination, decision, judgment or final order in his client's favor," with a source of payment for certain services rendered. N.Y.Jud.Law § 475 (McKinney 1983). Accordingly, we have stated that "[a]n attorney who merely defends or protects his client's interest in property without obtaining an affirmative recovery is not entitled to a lien on the property that his client retains." *In re Rosenman & Colin*, 850 F.2d 57, 61 (2d Cir.1988). Here, because it is undisputed that the services provided by Martz that are the subject of the dispute did not result in an affirmative recovery of any sort, section 475 is inapplicable and Martz's attempt to use it as the basis for an alleged entitlement must fail.

■ In light of the foregoing analysis, it is apparent that New York does not provide Martz with a legitimate claim of entitlement to the benefits of her contract with the Village. Rather, Martz simply is alleging the breach of an ordinary contract. The right to payment on such a contract does not rise to the level of a constitutionally protected property interest. Our analysis of this issue in *S & D Maintenance* bears repeating:

> In one sense, of course, every enforceable contract right can be said to be an "entitlement." As long as a state provides judicial remedies for the enforcement of contracts, either specific performance or damages for breach, every person holds a legitimate expectation that his contractually conferred rights are secure. And whenever a person contracts with a state, breach by the state can be considered a denial of his entitlement to performance of the contract. If the concept of "entitlement" were this expansive, federal courts could be asked to examine the procedural fairness of every action by a state alleged to be in breach of its contracts. Yet, as the Seventh Circuit has observed, "We must bear in mind that the Fourteenth Amendment was not intended to shift the whole of the public law of the states into the federal courts." *Brown v. Brienen* 722 F.2d 360, 364 (7th Cir.1983).

844 F.2d at 966. Other courts have agreed with our holding in *S & D Maintenance. See Unger v. National Residents Matching Program*, 928 F.2d 1392, 1399 (3d Cir.1991); *Reich v. Beharry*, 883 F.2d 239, 242 (3d Cir.1989); *Inner City Leasing & Trucking Co. v. City of Gary*, 759 F.Supp. 461, 464–65 (N.D.Ind.1990); *see also San Bernardino Physicians' Servs. Medical Group, Inc. v. County of San Bernardino*, 825 F.2d 1404, 1409–10 (9th Cir.1987). Thus, where a breach of contract does not give rise to a deprivation of a protectible property interest, plaintiff's exclusive remedy "lies in state court for breach of contract." *S & D Maintenance*, 844 F.2d at 968. Therefore, since as a matter of law Martz does not have a constitutionally protected property interest in receiving payment on the vouchers, the district court properly granted summary judgment and dismissed the complaint. *See* Fed. R.Civ.P. 56(c).

### 2. Liberty Interest

Martz challenges the district court's determination that she was not deprived of a liberty interest in connection with Williams' alleged defamatory statements published in the *Maileader* more than five months after her appointment had expired. The district court found that, because these statements did not occur in the course of her dismissal or in connection with the Village's refusal to rehire her, Martz did not suffer a deprivation of any liberty interest. We agree.

■ Defamation alone, even by a government entity, does not constitute a deprivation of a liberty interest protected by the Due Process Clause. *See Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976) ("stigma" to reputation alone is neither liberty nor property sufficient to invoke Due Process Clause). Our cases have interpreted *Paul* to require that some "stigma plus" be established before mere defamation will rise to the level of a constitutional deprivation. *Easton v. Sundram*, 947 F.2d 1011, 1016 (2d Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992); *Neu v. Corcoran*, 869 F.2d 662, 667 (2d Cir.), *cert. denied*, 493 U.S. 816, 110 S.Ct. 66, 107 L.Ed.2d 33 (1989). In attempting to decipher exactly what the "plus" is, we have

stated that, in the context of defamation involving a government employee,

> defamation ... is not a deprivation of a liberty interest unless it occurs in the course of dismissal or refusal to rehire the individual as a government employee or during termination or alteration of some other legal right or status.... [T]he "plus" is not only significant damage to a person's employment opportunities but dismissal from a government job or deprivation of some other legal right or status.

*Id.* Several of our cases interpreting *Paul* clearly indicate that a concurrent temporal link between the defamation and the dismissal is necessary if the employee is to succeed upon a claim of liberty deprivation. *See, e.g., Brandt v. Board of Cooperative Educ. Servs.,* 820 F.2d 41, 45 (2d Cir.1987) (where defamatory statements were made at the time of the plaintiff's termination as public school teacher, plaintiff sufficiently alleged deprivation of liberty interest); *Baden v. Koch,* 799 F.2d 825, 831 (2d Cir.1986) (recognizing plaintiff's "weak liberty interest" where alleged defamatory remarks were released concurrently with public announcement of plaintiff's demotion to deputy medical examiner from chief medical examiner); *Gentile v. Wallen,* 562 F.2d 193, 198 (2d Cir.1977) (alleged defamatory statements made after plaintiff had been terminated from employment as public school teacher amounted to "simple defamation" which does not trigger due process rights); *Huntley v. Community Sch. Bd.,* 543 F.2d 979, 985–86 (2d Cir.) (defamatory remarks in public announcement and inclusion of those remarks in plaintiff's employment record at time of termination as school principal sufficient basis for due process claim), *cert. denied,* 430 U.S. 929, 97 S.Ct. 1547, 51 L.Ed.2d 773 (1976).

In this case, the absence of the necessary nexus between the defamation and the time of termination is obvious. Martz's last day of employment as Deputy Village Attorney was April 1, 1991—the day her appointment expired. The alleged defamatory statements of Williams were not published in the *Mailead-*

er until September 19, 1991—more than five months later. Thus, it is clear that the statements were not made in the "course of dismissal." Moreover, Williams' statements in the *Maileader* that Martz's purported malpractice had just recently come to his attention indicate that it could not have been a factor in the decision not to re-appoint her. Therefore, because Martz has failed to demonstrate that she was deprived of an interest protected by the Fourteenth Amendment, the district court properly dismissed this claim.

■ Having dismissed all of Martz's federal claims, the district court was correct in also dismissing her pendent state law claims. *See United Mineworkers of Am. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

## CONCLUSION

For the foregoing reasons, the judgment of the district court dismissing Martz's complaint *in toto* is Affirmed.