**PLANNED PARENTHOOD OF DUTCHESS–ULSTER, INC., Plaintiff–Appellant,**

v.

**William STEINHAUS, County Executive, individually and in his official capacity and County of Dutchess, New York, Defendants–Appellees.**

No. 1304, Docket 94–9016.

United States Court of Appeals, Second Circuit.

Argued March 31, 1995.

Decided July 14, 1995.

Dara Klassel, Legal Action for Reproductive Rights, Planned Parenthood Federation of America, Inc., New York City (Roger K. Evans, Legal Action for Reproductive Rights, Planned Parenthood Federation of America, Inc., New York City, Noel Tepper, Poughkeepsie, NY, on the brief), for plaintiff-appellant.

David D. Hagstrom, Van DeWater & Van DeWater, Poughkeepsie, NY, for defendants-appellees.

Before MINER, ALTIMARI and CABRANES, Circuit Judges.

ALTIMARI, Circuit Judge:

Plaintiff-appellant Planned Parenthood of Dutchess–Ulster, Inc. ("plaintiff" or "Planned Parenthood") appeals from the *sua sponte* decision of the United States District Court for the Southern District of New York (Brieant, J.) to abstain from adjudicating its complaint. Planned Parenthood, a provider of family planning services, alleged that defendant-appellee William Steinhaus ("Steinhaus"), the County Executive of Dutchess County, New York, and defendant-appellee Dutchess County ("the County"), refused to contract with it in reprisal for its advocacy in favor of the right to legal abortion, and for its provision of abortion services. According to plaintiff, defendants' refusal to consider it for a contract violated the First and Fourteenth Amendments, and the Equal Protection Clause; further, insofar as Planned Parenthood believed itself barred from providing in the future any county-funded services,

plaintiff asserted that the County's actions "constituted" a Bill of Attainder in violation of Article I, § 9, cl. 3 of the United States Constitution. The complaint also asserted several pendent state law claims, detailed below.

Because we conclude that abstention was improper, we vacate the district court's Order dated September 8, 1994, and remand.

## Background

Planned Parenthood is a non-profit organization that provides reproductive health services at seven clinics in Dutchess and Ulster Counties. It provides services and counselling to patients, among others, who are ineligible for governmental medical assistance by charging them according to their respective abilities to pay. Planned Parenthood also promotes in legislative and public policy arenas the right to an abortion, a procedure which plaintiff makes available with different monies than those at issue in this appeal. At the time this suit was filed, Steinhaus was the elected County Executive of Dutchess County. The instant dispute concerns the defendants' alleged unwillingness to consider renewing a longstanding contract with plaintiff for a family planning program aimed at teenagers (generally "the contract").

According to the complaint and other submitted documents, Planned Parenthood was under contract to the County from 1980 to 1992 to provide medical and social family planning services to low income women within Dutchess County. In November 1991, Steinhaus was elected to office, having purportedly promised supporters that, once he took office in January 1992, he would ensure that the County did not award the 1993 family planning contract to Planned Parenthood. Planned Parenthood also asserted that Steinhaus directed the Department of Social Services ("DSS") to find another provider to which to award the contract. A DSS representative advised plaintiff, in response to Planned Parenthood's expressions of interest in continuing to perform the contract in March and April 1993, that DSS had been instructed to identify new providers.

The County published a request for proposals ("RFP") to provide the contract services in the January 28, 1993 edition of several weekly newspapers, shortly after representatives of Planned Parenthood testified at a public budget hearing that it stood ready and willing to renew the contract. Planned Parenthood was not aware that the RFP had issued until more than a month after the February 9, 1993 deadline for proposals.

Although there were no timely responses to the RFP, DSS resisted plaintiff's informal expressions of interest in renewal. At the same time, DSS was reportedly soliciting other area providers positioned to perform the contract. A local health maintenance organization reportedly rejected DSS's offer to sign a contract, prompting Planned Parenthood to make a written offer to perform the contract pursuant to the terms and conditions of the 1992 contract. On May 11, 1993, DSS responded by advising plaintiff that the 1993 contract had been awarded to the Mid–Hudson Health Services Institute, Inc. ("Mid–Hudson"). Plaintiff contends that the terms of the contract awarded to Mid–Hudson were much less favorable to both the County and the contract beneficiaries than the terms of the previous contracts performed by Planned Parenthood. The 1993 contract was not signed until September 27, 1993; no services were rendered in 1993; and the contract was allowed to expire on December 31, 1993.

Planned Parenthood's attempts to compete for the 1994 contract, for which the County legislature had allocated $10,000, were equally unsuccessful. An RFP for the program was published in one newspaper on October 22, 1993 and in several other local papers on October 28, 1993. When the deadline for proposals expired, again no applications had been filed. In late November 1993, the County legislature rejected a proposed resolution put forth by some local legislators to persuade the legislature to direct Steinhaus to carefully consider Planned Parenthood. On November 18, 1993 Planned Parenthood delivered a letter to the County seeking consideration for the 1994 contract. After being advised that bidding had closed, Planned Parenthood wrote directly to Steinhaus, making a formal proposal. Although that letter went unanswered, plaintiff nonetheless

learned that DSS had solicited a local hospital to perform the contract. Subsequently, Planned Parenthood sued.

The complaint alleged that defendants violated federal law because they (1) infringed plaintiff's First Amendment rights by refusing to contract with it in reprisal for plaintiff's public position favoring the right of a woman to choose to have an abortion; (2) penalized Planned Parenthood for providing abortion-related services in violation of its rights and those of its patients protected by the Fourteenth Amendment; (3) violated the Equal Protection clause; (4) deprived plaintiff of due process; and (5) "constituted," by their actions, an illegal Bill of Attainder by barring plaintiff from "further contracting with the defendant County of Dutchess to supply family planning services."

In addition, Planned Parenthood alleged six state law claims. Planned Parenthood claimed that the defendants' actions violated Article 1, §§ 6 (due process), 8 (freedom of speech), 9 (right to assemble) and 11 (equal protection) of the New York State Constitution, as well as New York State General Municipal Law § 104–b (imposing procedures for awarding contracts to assure the prudent use of the public fisc); and Title 18 of the New York Comprehensive Rules and Regulations, §§ 407.2, 407.10 (prescribing procedures for amending the County Comprehensive Social Services Plan).

Planned Parenthood requested the following relief: (1) a declaratory judgment stating that its rights and those of its patients were violated; (2) preliminary and permanent injunctive relief directing Steinhaus and the County to consider its application for the 1994 contract without regard to plaintiff's position on the issue of abortion; (3) preliminary and permanent injunctive relief awarding the 1994 family planning contract to Planned Parenthood; and (4) compensatory and punitive damages as well as attorneys' fees. On appeal, plaintiff concedes that its request for injunctive relief is moot: The 1994 contract has expired, and defendants apparently discontinued the teen family planning program. Plaintiff now seeks only damages.

Defendants moved to dismiss, a motion which the district court treated as a motion for summary judgment. The district court concluded that Planned Parenthood's First Amendment claim presented "a non-frivolous serious Constitutional issue which provides fair ground for litigation." Nonetheless, the court abstained because it found that "the relief sought is directed to the heart of local government and implicates basic American principles of Home Rule...." Although the parties did not brief the abstention issue, the court believed that its duty to avoid unnecessarily deciding a constitutional question trumped its obligation to adjudicate. The district judge relied on both *Pullman, infra,* and *Burford, infra,* abstention principles, on the ground that "a political question is presented in a sensitive area of social policy, implicating expenditure of municipal funds, and the state courts or the State Commissioner of Social Welfare could act to obviate a Constitutional problem." Plaintiff now appeals.

### Discussion

We begin our discussion by analyzing the nature of plaintiff's claims. All of Planned Parenthood's claims are based on the same principal grievance which, we believe, the district court—abetted by the defendants, as well as by plaintiff's prayer for relief—misapprehended. Steinhaus and the County assert that "the core of this dispute is plaintiff's claim *to the right to be awarded contracts* under state laws and state regulations...." (emphasis added). In accord with defendants' view of the case, the district court stated in its opinion, "if [Planned Parenthood's] legal position is upheld, a federal court apparently will be directing the local taxpayers to fund this non-mandatory social program [teen family planning counselling] for eternity, when its sponsors could not muster a majority in the Dutchess County Board of Legislators to do so for one year."

We believe the district court labored under an unnecessarily broad construction of the relief sought by the plaintiff. In our view, plaintiff principally sought a ruling on whether the County denied it the opportunity *to compete* for the contract because County offi-

cials, including Steinhaus, objected to the organization's position with respect to abortion as a family planning option. As the district court properly recognized, plaintiff alleged a "serious Constitutional issue." Although we express no view as to the likely merits of plaintiff's position, we conclude that the district court erred in declining to exercise jurisdiction. With this understanding of plaintiff's principal grievance, we turn to the legal principles that guide our review.

■ Abstention is a narrow exception to the generally broad duty of federal courts to exercise jurisdiction. *See Ankenbrandt v. Richards,* 504 U.S. 689, 705, 112 S.Ct. 2206, 2215, 119 L.Ed.2d 468 (1992). There is little, if any, discretion to abstain in a case which does not meet the requirements of a particular abstention principle. *See Bethphage Lutheran Serv., Inc. v. Weicker,* 965 F.2d 1239, 1245 (2d Cir.1992). Further, "the presence of a federal basis for jurisdiction may raise the level of justification needed for abstention." *Colorado River Water Conservation Distr. v. United States,* 424 U.S. 800, 815 n. 21, 96 S.Ct. 1236, 1245 n. 21, 47 L.Ed.2d 483 (1976); *see also County of Suffolk v. Long Island Lighting Co.,* 907 F.2d 1295, 1308 (2d Cir.1990). We review the decision of the district court for an abuse of discretion, although our appellate inquiry is especially rigorous in this context. *See Bethphage,* 965 F.2d at 1244–45.

*A. Pullman Abstention*

■ The district court relied in part on an abstention doctrine identified in *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), which "involves an inquiry focused on the possibility that the state courts may interpret a challenged state statute so as to eliminate, or at least to alter materially, the constitutional question presented." *Ohio Bureau of Employment Servs. v. Hodory,* 431 U.S. 471, 477, 97 S.Ct. 1898, 1902, 52 L.Ed.2d 513 (1977); *see also Temple of the Lost Sheep, Inc. v. Abrams,* 930 F.2d 178, 182 (2d Cir.), *cert. denied,* 502 U.S. 866, 112 S.Ct. 193, 116 L.Ed.2d 153 (1991). Three criteria must be established in order to justify abstention on *Pullman* grounds: (1) an unclear state stat-

ute or uncertain state law issue; (2) determination of the federal issue turns upon resolution of the unclear state law provision; and (3) the state law provision is susceptible to an interpretation that would avoid or modify the federal constitutional question presented. *See Williams v. Lambert,* 46 F.3d 1275, 1281 (2d Cir.1995); *Greater New York Metro. Food Council v. McGuire,* 6 F.3d 75, 77 (2d Cir.1993) (per curiam).

■ Defendants' attempts to position this case among those in which *Pullman* abstention was appropriate are not persuasive. Specifically, the defendants have failed to identify unclear state law issues whose proper interpretation would resolve, moot, or modify the federal constitutional issue presented. *See United Fence & Guard Rail Corp. v. Cuomo,* 878 F.2d 588, 593 (2d Cir. 1989) (federal courts should abstain " 'when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided' ") (quoting *Hawaii Hous. Auth. v. Midkiff,* 467 U.S. 229, 236, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984)). The regulations at issue are neither ambiguous nor unintelligible, nor are they rendered "unclear" merely because no state court has yet construed them. *See Wisconsin v. Constantineau,* 400 U.S. 433, 438–39, 91 S.Ct. 507, 510–11, 27 L.Ed.2d 515 (1971) (abstention not warranted by fact that state courts had not interpreted state law provision); *see also United Fence & Guard Rail,* 878 F.2d at 595–96.

Further, defendants have not explained how the federal issue presented in this case—whether defendants denied fair consideration of Planned Parenthood's proposal as a result of arguably impermissible considerations—could be mooted by any particular interpretation of the state regulations at issue. The defendants' alleged failure to comply with the procedural requirements set forth in N.Y.Gen.Mun.L. § 104–b and N.Y.Comp.R. and Regs. tit. 18, §§ 407.2, 407.10 has no bearing on the constitutional issue presented. Nor, finally, are we aware of a statutory construction which could cure the constitutional violations alleged by plaintiff. *See Williams,* 46 F.3d at 1282 (no interpretation of statute could avoid fact that

plaintiff fell within class of people at whom statute was aimed).

Because state law was neither unclear nor "tangled," *see, e.g., Ferran v. Town of Nassau,* 11 F.3d 21, 23 (2d Cir.1993) (appropriate to allow state courts to resolve threshold question of whether, under state law, plaintiffs owned disputed land because such a finding was essential to resolution of § 1983 action), *cert. denied,* —— U.S. ——, 115 S.Ct. 572, 130 L.Ed.2d 489 (1994), the district court abused its discretion in abstaining pursuant to the *Pullman* doctrine.

### B. Burford *Abstention*

The district court also abstained pursuant to principles articulated in *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). There, the Supreme Court approved abstention where "exercise of federal review of the question . . . would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colorado River,* 424 U.S. at 814, 96 S.Ct. at 1245; *see also Bethphage,* 965 F.2d at 1243.

■ *Burford* abstention is proper in order to "avoid resolving difficult state law issues involving important public policies or avoid interfering with state efforts to maintain a coherent policy in an area of comprehensive regulation or administration." *American Disposal Servs., Inc. v. O'Brien,* 839 F.2d 84, 87 (2d Cir.1988); *see also Bethphage,* 965 F.2d at 1243. Again, the court looks to several factors to determine the applicability of *Burford* abstention, including: "[1] the degree of specificity of the state regulatory scheme, [2] the necessity of discretionary interpretation of state statutes, and [3] whether the subject matter of the litigation is traditionally one of state concern." *Bethphage,* 965 F.2d at 1243 (citation omitted).

■ In applying these factors to plaintiff's claims, the defendants urge that resolution of Planned Parenthood's claims would require the district court to interpret (1) N.Y.Gen. Mun.L. § 104–b which "assure[s] the prudent and economical use of public moneys in the best interests of the taxpayers . . . [and] guard[s] against favoritism, improvidence,

extravagance, fraud and corruption;" and (2) N.Y.Comp.Codes R. & Regs. tit. 18 §§ 407.2, 407.10, which require each social service district to follow certain procedures when modifying the multi-year comprehensive plan for the provision of social services that each district must create.

These rules and regulations are not sufficiently complex to weigh in favor of abstention. *Cf. Burford,* 319 U.S. 315, 319–25, 63 S.Ct. 1098, 1100–03, (administrative system, including discrete multi-level judiciary, for the regulation, administration and conservation of Texas's oil and natural gas industry whose impact upon the state's economy were undisputed); *Bethphage,* 965 F.2d at 1243 (complex state Medicaid scheme with eighteen regulatory sections providing procedural and substantive guidance for the determination of rates and the inclusion of specified costs whose consistent application demanded the expertise and best judgment of the state Commissioner). The straightforward statute and regulations invoked here have the comparatively modest goals of ensuring against waste, and requiring districts to prepare plans guiding the provision of social services. If these statutes indeed amount to a "scheme" as envisioned under *Burford,* it does not rise to the requisite degree of complexity.

As to the second prong, the regulations contain no broad terms requiring interpretation by a state agency or experts in the field. *See, e.g., Bethphage,* 965 F.2d at 1243. We foresee no "[c]onflicts in the interpretation of state law, dangerous to the success of state policies. . . ." *Burford,* 319 U.S. at 334, 63 S.Ct. at 1107; *see also Bethphage,* 965 F.2d at 1243.

Finally, the court looks to whether the subject matter is of unique importance to the state. Although we recognize New York's interest in the integrity of its procedures for awarding municipal contracts, we conclude that, in the balance, this factor is not enough to justify abstention. Applying the *Burford* factors pragmatically and flexibly, as we must, *see Bethphage,* 965 F.2d at 1244, we conclude that the district court inappropriately abstained on *Burford*'s authority.

### C. Merits of Plaintiff's Federal Claims

Although we conclude that the district court should have exercised jurisdiction, we express no position on the merits of plaintiff's federal claims. In resolving those substantive claims, the district court may wish to consider the following cases, in addition to *Downtown Auto Parks, Inc. v. City of Milwaukee*, 938 F.2d 705, 710 (7th Cir.) (termination of lease for political reasons not actionable), *cert. denied*, 502 U.S. 1005, 112 S.Ct. 640, 116 L.Ed.2d 657 (1991): *O'Hare Truck Service, Inc. v. City of Northlake*, 47 F.3d 883, 885-86 (7th Cir.1995) (police department's action in removing plaintiff tow truck company from municipal towing list for political reasons violated neither First Amendment nor due process right of contractor); *Umbehr v. McClure*, 44 F.3d 876, 883 (10th Cir.1995) (independent government contractors are protected from retaliatory government action to the same extent as government employees), *cert. granted*, —— U.S. ——, 115 S.Ct. 2639, 132 L.Ed.2d 878 (1995); *Blackburn v. City of Marshall*, 42 F.3d 925, 934 (5th Cir.1995) (owner of towing company stated free speech claim by alleging that public official retaliated for exercise of First Amendment rights); *Horn v. Kean*, 796 F.2d 668, 677 (3d Cir.1986) (independent contractors enjoy no protection from removal for political reasons); *Blankman v. County of Nassau*, 819 F.Supp. 198, 205 (E.D.N.Y.) (no protected free speech, association or equal protection claims where plaintiffs alleged political motivation in denial of public contract), *aff'd without opinion*, 14 F.3d 592 (2d Cir. 1993). This Court has not yet decided whether the constitution protects government contractors from retaliation for their political views; we leave this determination to the district court in the first instance (unless, of course, the United States Supreme Court decides the question in the interim).

### Conclusion

Plaintiff's principal complaint is that the defendants violated its federal constitutional rights, and those of its patients, by denying it the chance to compete fairly for a government contract in reprisal for Planned Parenthood's position with respect to abortion. This claim can be resolved without resolution of unclear state law, and without entangling the federal courts in a complex state regulatory scheme. Accordingly, the district court abused its discretion when it abstained. We have considered all of defendants' remaining contentions and reject them as meritless. We vacate the district court order and remand the case for consideration on the merits.