**Hugh FOX, Jr., Plaintiff,**

**v.**

**Arthur J. DORAN, individually and in his capacity as Chief Judge, City Court of Yonkers, New York, Frank McGovern, individually and in his official capacity as Director of the Parking Violations Bureau of the City of Yonkers, Thomas Dugan, individually and officially as President of the Yonkers Municipal Civil Service Commission, the City of Yonkers, N.Y., and Empire Municipal Services, Inc., Defendants.**

**No. 94 CV 9267(BDP).**

United States District Court,
S.D. New York.

Aug. 4, 1997.

Jane B. Gould, Craig Dickenson, Lovett & Gould, White Plains, NY, for Plaintiff.

Rebecca Ann Darden, Attorney General's Office, New York City, for Defendant Doran.

Kevin Crozier, Corporation Counsel, Yonkers, NY, for Defendants McGovern, Dugan and City of Yonkers.

## MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

Hugh Fox, Jr. brings this action pursuant to 42 U.S.C. § 1983 against defendants Arthur Doran, Chief Judge of the Yonkers Civil Court, Thomas Dugan, President of the City of Yonkers Municipal Civil Service Commission, Frank McGovern, Director of the Parking Violations Bureau ("PVB") for the City of Yonkers, and Empire Municipal Services, Inc. ("Empire"), a private collection agency. Fox alleges, *inter alia,* that defendants, in violation of his First Amendment rights, terminated his employment as Deputy City Marshal for the City of Yonkers in retaliation for having reported an alleged ticket fixing scheme and for providing information to the plaintiff in an unrelated case before this Court that involved allegations of corruption in the City of Yonkers Police Department. Defendants Doran, McGovern, and the City of Yonkers now move for summary judgment, pursuant to Fed.R.Civ.P. 56. For the reasons stated below, their motion is granted.[1]

## BACKGROUND

On a motion for summary judgment, "[a]s a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion." *Brady v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir.1988). The following facts are construed accordingly.

Hugh Fox is currently a full-time firefighter in the City of Yonkers, a position which he has maintained since 1979. On December 18, 1991, Fox was appointed a deputy city marshal for the City of Yonkers. After that appointment, Empire, a private collection agency, and Fox entered into an oral agreement, pursuant to which Fox was responsible for collecting on delinquent parking tickets. Fox, in turn, received a fee—ten dollars plus a certain percentage of the judgment—for each execution.

In connection with his work as a deputy city marshal, Fox employed his own staff whose salaries he paid and upon which he paid taxes. He rented his own office property and maintained bank accounts to run the Marshal operation. In addition, he established his own work hours and was not a salaried employee of Yonkers or Empire. He entered into his own collection agreements with Empire. During Fox's employment as deputy marshal, Empire forwarded 8000 executions for judgments obtained by the City against parking ticket scofflaws. Pursuant to N.Y.C.P.L.R. § 8011(b)(L), sheriffs, including city marshals, are entitled to charge $10 payable in advance for each execution against property.

Fox alleges that after his appointment as a deputy city marshal, he was informed that McGovern, Doran, and Empire had engaged in a traffic ticket fixing scheme to benefit politically connected individuals in the City of Yonkers. Fox claims that he refused to participate in the scheme and expressed to McGovern that he believed the scheme to be unlawful. Fox also asserts that he provided information to the plaintiff in *Rubeo v. Olsen,* 94 Civ. 8445(BDP), an unrelated case tried to this Court which involved, *inter alia,* an alleged conspiracy to "rig" a hearing before the Yonkers Civil Service Commission.

On November 30, 1994, Doran advised plaintiff in writing that his term as deputy city marshal would not be extended beyond December 31, 1994. Deputy marshals, like Fox, are appointed by the senior judge of the City Court of Yonkers, here Doran, and

---

**1.** In a Stipulation and Order dated May 15, 1996, plaintiff voluntarily dismissed the action against Empire Municipal Services. In a Stipulation and Order dated July 7, 1997 plaintiff dismissed the action against Thomas Dugan.

serve at "the pleasure of the senior judge. [who] may suspend ... [a] deputy marshal ... for such other cause as he may deem reasonable or just." 1975 N.Y. Laws ch. 309, § 27.

Fox contends that "in connection with his termination," defendants "falsely and publicly announced to the public and media that [he] had ... intentionally and/or illegally overcharged persons in connection with executions" and "published stigmatizing notices in the local press and made derogatory statements on local cable network news" regarding his professional activities as deputy city marshal. Fox Aff. at ¶¶ 14, 15. Plaintiff, while failing to identify any specific statements in support of that allegation, adverts to an article published in a local newspaper in which Doran described Fox's collection tactics as "too aggressive" and stated that "recent collection tactics were questionable.'" Doran was further quoted as stating that "[Fox] made good-faith mistakes. They could be turned out to be very large mistakes ... awful mistakes. I like Clint Eastwood but I don't want him working as a Marshal." In that same article, McGovern was attributed as stating that Fox had billed $170,000 in personal fees and unearned mileage. Beyond these statements and plaintiff's conclusory allegations, the Court's review of the record reveals no evidence that Doran or McGovern announced that those overcharges were "intentionally or illegally" made.

Fox contends that as a result of his objections to the alleged picket fixing scheme and his involvement in the *Rubeo* case, the defendants terminated him from his position as deputy city marshal in violation of his First Amendment right to free speech. He further alleges that defendants' statements to the public and media violated due process. In addition, Fox asserts claims against defendants for breach of contract and for the violation of his free speech rights under Article I of the New York State Constitution.

Defendants Doran and McGovern move for summary judgement on the ground that they are qualifiedly immune from liability and, alternatively, that Fox failed to state a claim for deprivation of a liberty right without due process. The City of Yonkers also moves for summary judgment on the ground that no genuine issue of material fact exists as to its liability under 42 U.S.C. § 1983.

## DISCUSSION

### A. Qualified Immunity

■ In general, public officials are entitled to qualified immunity if their conduct does not violate constitutional rights that were clearly established at the time the alleged violation occurred. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Weyant v. Okst,* 101 F.3d 845, 857 (2d Cir.1996); *Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d Cir.1991). Even when a plaintiff's federal rights are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified immunity might still be available as a bar to a plaintiff's suit if it was objectively reasonable for the public official to believe that his acts did not violate those rights. *Kaminsky,* 929 F.2d at 925; *see Anderson v. Creighton,* 483 U.S. 635, 638–39, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987); *Weyant,* 101 F.3d at 857.

As our Court of Appeals has noted, the Supreme Court has "expressly encouraged the use of summary judgment to quickly extricate government officials from the burdens of defending against insubstantial suits." *Kaminsky,* 929 F.2d at 925. "Subjective inquiry into a government employee's motivations in acting or refusing to act has been rejected as the doctrine's test because such inquiry generally implicates questions of fact and makes it incompatible with the expressed policy that summary judgment be readily available to protect government employees from suit." *Id.* at 925.

■ Defendants argue that because Fox, in his capacity as a deputy city marshal, was an independent contractor of the PVB, and because the Supreme Court has only recently held that independent contractors are entitled to First Amendment protection, plaintiff's rights under the First Amendment were not clearly established in 1994, when the alleged violations occurred. Fox does not

contest his status as an independent contractor, as opposed to employee, of the PVB.[2]

■ In determining whether a particular right was clearly established at the time the defendants acted, our Court of Appeals has considered three factors: (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful. *Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir.1996); *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991); *Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989). Thus, in order to ascertain what was "clearly established" when the decision to terminate Fox as deputy city marshal was made, the Court must review the state of the law at that time. *See Jermosen,* 945 F.2d at 550.

At the time of the alleged constitutional violation, our Court of Appeals had "not yet decided whether the constitution protects government contractors from retaliation for their political views." *Planned Parenthood of Dutchess–Ulster, Inc. v. Steinhaus,* 60 F.3d 122, 128 (2d Cir.1995). Indeed, in specifically declining, in 1995, to decide the question, the court, adverting to conflicting case law from other Courts of Appeals, specifically "le[ft] th[e] determination to the district court in the first instance (unless, of course, the United States Supreme Court decides the question in the interim)." *Steinhaus,* 60 F.3d at 128.

It was not until 1996 that the Supreme Court decided the question. In *Board of County Commissioners v. Umbehr,* —— U.S. ——, ——, 116 S.Ct. 2342, 2346, 135 L.Ed.2d 843 (1996), the Court noted that it had not previously considered "whether and to what extent the First Amendment restricts the freedom of federal, state, or local governments to terminate their relationships with independent contractors because of the contractor's speech." At the time of that decision, the treatment of the issue by the Courts of Appeals were in conflict—the Third and Seventh Circuits had held that an independent contractor who does not have a property interest in his contract with the government has no right not to have that contract terminated in retaliation for his exercise of First Amendment freedoms whereas the Fifth, Eighth, and Tenth Circuits had held that independent contractors were protected under the First Amendment from retaliatory government action. *Id.*

The *Umbehr* Court, unpersuaded that there is a "difference of constitutional magnitude," *Umbehr,* —— U.S. at ——, 116 S.Ct. at 2352, between independent contractors and employees in the context of retaliatory employment decision, held that independent contractors are protected under the First Amendment and that the balancing test set forth in *Pickering v. Board of Educ. of Township High Sch. Dist. 205,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968), adjusted to weigh the government's interests as contractor, rather than employer, determines the extent of their protection. *Umbehr,* —— U.S. at ——, 116 S.Ct. at. 2346.

In light of our Court of Appeals silence on the issue, the lack of direction from the Supreme Court, and the conflicting case law of other Circuits' Courts of Appeals, I con-

---

**2.** Indeed, the New York Court of Appeals, in *In re Unified Court System,* 58 N.Y.2d 876, 460 N.Y.S.2d 493, 447 N.E.2d 41 (1983), held that city marshals are independent contractors, and not employees. The court based that determination on the reasoning of the dissenting justice from the Appellate Division below. According to the dissenting justice,

city marshals who maintain their own offices, employee their own staff, pay their own expenses, set their own schedules, derive their own income from fees, and over whom the State lacks any control whatsoever respecting the manner in which their work is to be per-

formed, possess all the classic indicia of independent contractors.

*In re Unified Court System v. Roberts,* 88 A.D.2d 717, 451 N.Y.S.2d 284, 286 (1982), *rev'd,* 58 N.Y.2d 876, 460 N.Y.S.2d 493, 447 N.E.2d 41 (1983) (Yesawich, J., dissenting). Here, all of the above factors weigh in favor of a finding that Fox was an independent contractor. Based on the undisputed facts, Fox maintained his own office, employed his own staff, paid his own expenses, set his own schedule, derived his marshal income from fees, and established his own fee arrangements with other deputy marshals and the collection agent, Empire.

clude that defendants Doran and McGovern did not violate any established First Amendment rights of which a reasonable official would have known. Those defendants are, accordingly, entitled to qualified immunity from suit in their individual capacities on Fox's First Amendment claim.

## B. Deprivation of Liberty without Due Process

Defendants also move for summary judgment on Fox's claim that he was deprived of a liberty interest without due process. Specifically, Fox's complaint alleges that the defendants "falsely and publicly announced to the public and the media that Plaintiff had as deputy city marshal intentionally and/or illegally overcharged persons in connection with executions." Such announcements, according to Fox, "destroyed Plaintiff's professional and personal reputation," Complaint ¶ 21, thus violating his right to liberty without due process, in violation of the Fourteenth Amendment.

In order to allege a violation of his due process rights, Fox must establish that he has suffered a deprivation of a constitutionally protected liberty interest or property interest. *See Board of Regents v. Roth,* 408 U.S. 564, 570–71, 92 S.Ct. 2701, 2705–06, 33 L.Ed.2d 548 (1972), *holding limited by Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Gagliardi v. Village of Pawling,* 18 F.3d 188, 193 (2d Cir.1994). If the interest he asserts is not of a constitutional dimension, then his arguments fails. *Roth,* 408 U.S. at 570–71, 92 S.Ct. at 2705–06.

■ While a protectable liberty interest may be implicated " '[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him," *Valmonte,* 18 F.3d at 999, damage to one's reputation alone does not constitute a deprivation of a liberty interest protected by due process. *See Paul v. Davis,* 424 U.S. at 701, 96 S.Ct. at 1160–61; *Martz v. Incorporated Village of Valley Stream,* 22 F.3d 26 (2d Cir.1994). Our Court of Appeals has required that some "stigma plus" be established before mere defamation will rise to the level of a constitutional depri-

vation. *Martz,* 22 F.3d at 31. Thus, defamation

is not deprivation of a liberty interest unless it occurs in the course of dismissal or refusal to rehire the individual as a government employee or during the termination or alteration of some other legal right or status.... [T]he "plus" is not only significant damage to a person's employment opportunities but dismissal from a government job or deprivation of some other legal right or status.

*Martz,* 22 F.3d at 32; *see Donato v. Plainview–Old Bethpage Cent. Sch. Dist.,* 96 F.3d 623, 630 (2d Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1083, 137 L.Ed.2d 218 (1997); *O'Neill v. City of Auburn,* 23 F.3d 685, 691 (2d Cir.199:); *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 446 (2d Cir.1980). The same test has been applied in cases involving government contracts. *See S & D Maintenance Co., Inc. v. Goldin,* 844 F.2d 962, 970 (2d Cir.1988); *Asbestec Constr. Services, Inc. v. U.S. Environmental Protection Agency,* 849 F.2d 765, 769 (2d Cir.1988).

■ Here, plaintiff fails to establish the requisite "plus" necessary to implicate a constitutionally protected interest. Although plaintiff alleges, somewhat broadly, that Doran and McGovern made defamatory statements about him, he fails to identify any specific statements in support of that allegation. Instead, plaintiff directs the Court's attention to an undated newspaper article, from which this Court can glean only three statements attributable to the defendants that even arguably support plaintiff's allegations. They are (1) a statement attributed to McGovern that "for each notice, for which [Fox] was entitled to $10, he added $20 in personal fees.... All told, Fox billed people more than $170,000 in personal fees and mileage;" (2) Doran's statement that Fox was "too aggressive" and that recent fine collections were "questionable;" and (3) Doran's statement that "[Fox] made good-faith mistakes. They could have turned out to be very large mistakes ... awful mistakes.... I like Clint Eastwood, but I don't want him working as a marshal."

■ These statements "will not support a cause of action for a name-clearing hearing

unless the allegations 'go to the very heart of [Fox's] professional competence' ... and threaten 'to damage his professional reputation.'" *O'Neill*, 23 F.3d at 692–93. Indeed, the allegations must "denigrate the employee's competence as a professional and impinge the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession." *Donato*, 96 F.3d at 631; *O'Neill*, 23 F.3d at 693.

I cannot find that these statements stigmatize Fox in such a manner as to "damage his professional reputation" and significantly impede his ability to practice his profession. *O'Neill*, 23 F.3d at 692. A liberty interest claim can only be premised on statements that the plaintiff could show at a hearing to be "substantially false." *Codd v. Velger*, 429 U.S. 624, 627, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977); *S & D Maintenance*, 844 F.2d at 971 (to withstand summary judgment, the "employee must allege that the charges are false"). Here, no such charge of substantial falsity can be made because the statements attributed to McGovern and Doran in the article merely described the undisputed fact that Fox collected a certain sum in overcharged fees.[3] Plaintiff acknowledges having mailed eight thousand demand letters to judgment debtors which contained unwarranted fee charges, claiming that he relied on paperwork provided to him by Empire. Defendants do not, in those statements, represent that the overcharging was intentional. The only disputed fact raised in the article was the precise amount of the overcharges. According to plaintiff's testimony, anywhere between $40,000 and $136,000 was overcharged, whereas, defendants, as quoted in the article stated that the overcharge totaled $170,000. Thus, whatever stigma attached to Fox as a result of these statements is a consequence of the fact that 8000 people were overcharged, and not any false statements of the defendants. *See S & D Maintenance*, 844 F.2d at 971.

■ Moreover, the statement relating to the amount overcharged was followed by statements describing the overcharging as resulting from "good-faith mistakes." As our Court of Appeals has noted, "an employee charged with derelictions largely within [his] own power to correct is not deprived of [a liberty] interest." *Donato*, 96 F.3d at 630. By contrast, "a government announcement that it has fired an employee for incompetence or because [he] can no longer do the job is 'considerably graver' and concerns more potential for further disqualification from employment than a statement that the individual performed a job poorly." *Id.* Here, the allegedly stigmatizing statements fall within the second category, as they not only relate to "mistakes" within Fox's power to correct, but were tempered considerably by the statement that those mistakes were made in "good faith." *See S & D Maintenance*, 844 F.2d at 971.

I accordingly find that the comments do not go to the "very heart of [Fox's] professional competence" and therefore do not drastically impair his chance of receiving another or fee-collecting or process serving position. As the statements do not implicate a liberty interest, defendants' motion for summary judgment on plaintiff's due process claim is granted.

## C. Municipal Liability under Section 1983 [4]

It is well established that in order to sustain a claim for relief under 42 U.S.C. § 1983

---

**3.** At deposition, Fox testified as follows:

Q: What did you find that was wrong with these documents?
A: That one of the charges were overcharged.
Q: And how many documents did you review?
A: A little over 8,000 I would say.
Q: So almost everybody was overcharged?
A: Almost everybody if not everybody.

\* \* \* \* \* \*

Q: Do you know how much a total of, out of the 8000 people that were overcharged, do you know how much they were overcharged?
A: I believe anywhere from $5.00 to $17.00 and some odd change.
Fox Dep. at 70, 100.

**4.** In addressing the question of the City of Yonkers' liability under section 1983, the Court's analysis extends to those claims brought against the

against a municipal defendant, the plaintiff must show the existence of an officially adopted policy or custom that caused injury and a causal connection between that policy or custom and the deprivation of a constitutional right. *Monell v. Department of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978); *see City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Walker v. City of New York,* 974 F.2d 293, 301 (2d Cir.1992).

Here, as this Court has found that the plaintiff's due' process claim fails on the ground that no liberty interest has been implicated, the only remaining injury for the Court's consideration is Fox's termination as a deputy marshal, allegedly in violation of Fox's First Amendment rights. Thus, Fox, in order to sustain his section 1983 claim against the City must not only show the existence of a policy that caused his termination, but also a causal connection between that policy and the allegedly retaliatory termination.

 Fox appears to concede, as he must, that Doran, who took the allegedly retaliatory action in violation of Fox's First Amendment rights, as the Chief Judge of the Yonkers City Court, was an official of the State of New York and not the City of Yonkers.[5] Fox, nonetheless contends that the municipality is liable for the alleged constitutional deprivation, arguing in essence, that by terminating Fox as deputy marshal, Doran was acting "in concert with" McGovern, the Director of the City's Parking Violations Bureau, thereby rendering termination an 'official act of the City. Plaintiff has presented no evidence to establish the existence of any unconstitutional policy or custom beyond his assertion that Doran and McGovern had contrived a "retaliatory scheme" against him. Indeed, Fox has adduced no evidence that such a "retaliatory scheme" existed. The "mere assertion ... that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an infer-

ence." *Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995). Here, Fox has failed to adduce any admissible evidence that the City had a municipal policy that rendered it liable for any deprivation of his constitutional rights. Accordingly, the City Yonkers' motion to dismiss the First Amendment claims against it is granted. *See Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993).

The federal claims against the defendants having been dismissed, I decline to exercise jurisdiction over the remaining state-law claims against them. *See* 28 U.S.C. § 1367; *Martz v. Valley Stream,* 22 F.3d 26, 32 (2d Cir.1994); *Town of West Hartford v. Operation Rescue,* 915 F.2d 92, 104 (2d Cir.1990).

**CONCLUSION**

For the reasons stated above, defendants City of Yonkers, Doran, and McGovern's motion is granted. The Clerk of the Court is directed to enter judgment in favor of those defendants.

SO ORDERED.

---

individually named defendants in their official capacity. As our Court of Appeals has stated, "the real. party in interest in an official capacity suit is the governmental entity and not the named official." *Frank v. Relin,* 1 F.3d 1317, 1326 (2d Cir.1993).

**5.** Under New York Judiciary Law § 39, "all justices, judges, and nonjudicial officers and employees of the courts and court-related agencies of the unified court system [including the city courts] ... shall be employees of the state of New York."