929 F.2d 922
 Sylvia KAMINSKY, as Administratrix of the Estate of Herbert
Kaminsky, Plaintiff-Appellee,
v.
Saul ROSENBLUM, Raymond Broaddus, E. Michael Kalonick,
Charles J. Scully, John Doe, Defendants,
E. Michael Kalonick, Charles J. Scully, Defendants-Appellants.
 No. 535, Docket 90-7587.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 28, 1990.
Decided April 9, 1991.
 
 Carol A. Cimkowski, Asst. Atty. Gen. of the State of N.Y. (Robert Abrams, Atty. Gen., New York City, of counsel), for defendants-appellants.
 Mary Ann Doyle (Edwin G. Schallert, Gail S. Johnson, Debevoise & Plimpton, New York City, of counsel), for plaintiff-appellee.
 Before OAKES, Chief Judge, and CARDAMONE and McLAUGHLIN, Circuit Judges.
 CARDAMONE, Circuit Judge:
 
 
 1
 While he was an inmate of Green Haven, a maximum security prison operated by the New York State Department of Correctional Services, Herbert Kaminsky died. This litigation arises out of the events that led up to his death. His wife, Sylvia Kaminsky, instituted a civil rights action under 42 U.S.C. Sec. 1983 against state corrections officials alleging that they failed to provide her husband with the proper medical care while he was in their custody, and that such conduct violated the decedent's Eighth Amendment right to be free from the infliction of cruel and unusual punishment.
 
 
 2
 The essence of the appeal is whether defendant's actions were objectively reasonable. The decedent, as an inmate of a maximum security prison, was one against whose plight popular prejudice might be said to run. It is not our task to mirror this supposed bias, but rather to examine defendants' conduct in a disinterested manner, undistorted by defendants' personal subjective interpretation of their actions; that is, we must determine whether there are sufficient facts to put at issue the objective reasonableness of defendants' actions.
 
 
 3
 The appeal before us is from an interlocutory order of the United States District Court for the Southern District of New York, Peter K. Leisure, Judge, that denied defendant E. Michael Kalonick's, Regional Health Services Administrator for the New York State Department of Correctional Services, and defendant Charles J. Scully's, Superintendent of Green Haven Correctional Facility, motion for summary judgment dismissing plaintiff's suit against them on the grounds of their qualified immunity.
 
 BACKGROUND
 
 4
 The facts are set forth in Judge Leisure's thorough opinion, reported at 737 F.Supp. 1309 (S.D.N.Y.1990), with which we assume the reader's familiarity. We recount only those facts relevant to the appeal. After being sentenced to two consecutive two to four year prison terms on April 30, 1985, Kaminsky was originally assigned to the Downstate Correctional Facility. He was then suffering from a variety of ailments, including high blood pressure, diabetes, angina, gout, and an enlarged spleen. He was taking medication which had been prescribed for some of these conditions. Within several months Kaminsky was transferred to Green Haven and--with the exception of one month in late 1985 when he was confined in New Jersey awaiting disposition of a felony indictment there--he remained an inmate at Green Haven until his death on August 28, 1986.
 
 
 5
 During Kaminsky's incarceration, defendants served in the positions earlier noted. Kalonick described his responsibilities as Regional Health Administrator as "an adviser and resource person to the nurse administrators and physicians responsible for health care in individual facilities and I was also responsible for insuring the compliance with central office policies and procedures." Scully stated that as Superintendent he was the "[c]hief executive officer responsible for the safety and custody of all inmates" and was "responsible for [the inmates'] medical care as well as for their well being" at Green Haven.
 
 
 6
 It is undisputed that Kaminsky received frequent medical attention while in prison, making numerous trips to the Westchester County Medical Center and visiting medical personnel at Green Haven often. Nonetheless, plaintiff alleges many instances of deficient medical care during the first ten months of the decedent's incarceration in that facility: delay in providing him with prescribed medication and in responding to requests for medical treatment made by his family, his lawyers and Kaminsky himself, missed appointments, and failure to monitor his condition.
 
 
 7
 The most serious allegations concern the quality of care given Kaminsky in the last three months of his life. Decedent's wife asserts in her complaint that Kalonick and Scully were aware of Kaminsky's condition, the lack of care given him, and the complaints regarding it. The district court found that--apart from seeing a nurse on two occasions--there was a three-month gap in decedent's care from June 1986 until August 1986, despite evidence that he lost 58 pounds in the eight-month period from January to August 1986 and that his condition was deteriorating alarmingly.
 
 
 8
 Plaintiff further alleges that Kaminsky's personal physician, Dr. Wroblewski, recommended his immediate hospitalization after examining him on August 21, 1986; but it was not until five days later, on August 26, that he was admitted to Horton Memorial Hospital where a lung biopsy was performed to determine the cause of the severe congestion from which he was suffering. Shortly after completion of the biopsy, Kaminsky died. An autopsy revealed: cirrhosis of the liver, coronary disease, diabetes, and an enlarged spleen--all previously diagnosed either before or during his stay at Green Haven. Kaminsky also tested positive for the AIDS virus and was suffering from pneumocystis carinii pneumonia, an opportunistic infection associated with AIDS. He had not been diagnosed for either of these diseases prior to his death.
 
 
 9
 Sylvia Kaminsky's Sec. 1983 action alleges the quality of medical care her husband received was so inadequate as to constitute cruel and unusual punishment under the Eighth Amendment. Defendants Kalonick, Scully, and Dr. Saul Rosenblum, Medical Director and physician at Green Haven during Kaminsky's time there, moved for dismissal of the complaint or, in the alternative, summary judgment on, inter alia, qualified immunity grounds. The district court, treating the motion as one for summary judgment, denied it, finding that there were disputed factual issues regarding the quality of Kaminsky's care and the degree of appellants' involvement in it. 737 F.Supp. 1309 (S.D.N.Y.1990). Scully and Kalonick appeal from the district court's order denying their motion for summary judgment on qualified immunity grounds. Because we agree that outstanding unresolved factual issues are present, the appeal is one from a non-final order, which must be dismissed for lack of appellate jurisdiction.
 
 DISCUSSION
 I Doctrine of Qualified Immunity
 
 10
 The doctrine of qualified immunity evolved as a balance between the need, on one hand, to hold responsible public officials exercising their power in a wholly unjustified manner and, on the other hand, to shield officials responsibly attempting to perform their public duties in good faith from having to explain their actions to the satisfaction of a jury. See Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir.1949) (L. Hand, Ch. J.), cert. denied, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950). The failure to protect public officials from the threat of frivolous suits is costly for the public. These costs range from deterring qualified individuals from accepting public positions, discouraging officials from the unflinching discharge of their duties, diverting their attention from their duties and focusing them instead on the expense of burdensome litigation. See Harlow v. Fitzgerald, 457 U.S. 800, 814, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982).
 
 
 11
 Qualified immunity therefore provides some balance between the unpalatable alternatives of either allowing guilty public officials to escape liability from civil damages and being unable to attract competent people to public service. The doctrine today shields government officials performing discretionary--as distinct from ministerial--functions from liability for damages arising from their actions which do "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818, 102 S.Ct. at 2738. A public official is insulated only from suit in his individual capacity, that is, only insofar as the action attempts to fasten personal liability on actions taken under color of state law. See generally Kentucky v. Graham, 473 U.S. 159, 165-68, 105 S.Ct. 3099, 3104-07, 87 L.Ed.2d 114 (1985) (comparing personal-capacity and official-capacity suits). In contrast, absent consent by the state, a Sec. 1983 action brought against a public officer in his official capacity is barred by the Eleventh Amendment. See Dube v. State University of New York, 900 F.2d 587, 594 (2d Cir.1990).
 
 
 12
 The Supreme Court has expressly encouraged the use of summary judgment to quickly extricate government officials from the burdens of defending against insubstantial suits. See Harlow, 457 U.S. at 815-16, 102 S.Ct. at 2736-37; Butz v. Economou, 438 U.S. 478, 507-08, 98 S.Ct. 2894, 2911-12, 57 L.Ed.2d 895 (1978). The threshold issue is whether the relevant law was clearly established at the time the alleged violation occurred. Harlow, 457 U.S. at 818, 102 S.Ct. at 2738. In other words, the rights that plaintiff asserts were violated must have been clearly established in a "particularized sense," so that a reasonable official would know that his actions violated plaintiff's rights. See Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); Eng v. Coughlin, 858 F.2d 889, 895 (2d Cir.1988).
 
 
 13
 Even when a plaintiff's federal rights are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified or good faith immunity might still be available as a bar to a plaintiff's suit if it was objectively reasonable for the public official to believe that his acts did not violate those rights. Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir.1990); Robison v. Via, 821 F.2d 913, 921 (2d Cir.1987) (citing Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)). If the right is so generalized that its application in the factual context of the case is subject to doubt, the immunity defense may bar action against the official. See Anderson, 483 U.S. at 639, 107 S.Ct. at 3038-39.
 
 
 14
 Subjective inquiry into a government employee's motivations in acting or refusing to act has been rejected as the doctrine's test because such inquiry generally implicates questions of fact and makes it incompatible with the expressed policy that summary judgment be readily available to protect government employees from suit. See Harlow, 457 U.S. at 815-16, 102 S.Ct. at 2736-37; Anderson, 483 U.S. at 639-40 & n. 2, 107 S.Ct. at 3038-39 & n. 2. In addition qualified immunity is generally considered separate and apart from the merits of the case, even though plaintiff's factual allegations must be examined, as they are here, in resolving the immunity issue. In the instant case the district court concluded that the resolution of the immunity defense involved disputed factual questions unable to be resolved on summary judgment. We agree.
 
 II Appellate Review of the Doctrine
 
 15
 An appellate court's jurisdiction to review the issue of qualified immunity following denial of a motion for summary judgment is governed by the collateral order doctrine. See Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Dube, 900 F.2d at 595. Denial of such a motion, though technically interlocutory, is appealable because the doctrine does not serve merely as a public official's defense to liability; it shelters that official from having to stand trial. Because the defense is effectively lost if a case is erroneously ordered to trial, a district court's decision denying a motion to dismiss a defendant's claim of immunity is immediately appealable, see Mitchell v. Forsyth, 472 U.S. 511, 526-27, 105 S.Ct. 2806, 2815-16, 86 L.Ed.2d 411 (1985); P.C. v. McLaughlin, 913 F.2d 1033, 1039 (2d Cir.1990), if the defense may be established as a matter of law, see Mitchell, 472 U.S. at 530, 105 S.Ct. at 2817-18; Magnotti, 918 F.2d at 367; Warren v. Dwyer, 906 F.2d 70, 74 (2d Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 431, 112 L.Ed.2d 414 (1990); Francis v. Coughlin, 891 F.2d 43, 44 n. 1 (2d Cir.1989); Langley v. Coughlin, 888 F.2d 252, 253-54 (2d Cir.1989), or if the denial is grounded on a fundamental misapplication of law. See Washington Square Post No. 1212 v. Maduro, 907 F.2d 1288, 1292 n. 1 (2d Cir.1990). Significant to the instant appeal is the rule that review is limited to those cases that can be decided as a matter of law, not ones that turn on disputed issues of fact. Mitchell, 472 U.S. at 530, 105 S.Ct. at 2817-18; see also Neu v. Corcoran, 869 F.2d 662, 664-65 (2d Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 66, 107 L.Ed.2d 33 (1989); Mahoney v. Hankin, 844 F.2d 64, 68 (2d Cir.1988).
 
 
 16
 The district court correctly ruled that Kaminsky had a clearly established right to be free from deliberate indifference to his medical needs. 737 F.Supp. at 1315-17. The Eighth Amendment, which plaintiff alleges is the constitutional right violated, draws its meaning "from the evolving standards of decency that mark the progress of a maturing society." Trop v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958). Translated into the correctional context, the Amendment means that prison officials must accord human dignity to each individual inmate. See Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976).
 
 
 17
 It is established law that deliberate indifference to the essential medical needs of prisoners violates the Eighth Amendment's proscription against the "unnecessary and wanton infliction of pain," see Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). Cruel and unusual punishment may consist of prison officials delaying an inmate access to needed medical care. See id. at 104-05, 97 S.Ct. at 291-92; Liscio v. Warren, 901 F.2d 274, 276-77 (2d Cir.1990) (failure to examine inmate going through "life-threatening" and "fast-degenerating" condition for three days could constitute deliberate indifference); Hathaway v. Coughlin, 841 F.2d 48, 50-51 (2d Cir.1988) (delay of two years in arranging surgery to correct pins in inmate's hip raises question of fact as to deliberate indifference of prison officials' conduct); Gill v. Mooney, 824 F.2d 192, 195-96 (2d Cir.1987) (denial of access to exercise program and failure to provide necessary medical treatment as punishment for misconduct states colorable constitutional claim of deliberate indifference).
 
 III Immunity in the Instant Case
 
 18
 Appellants do not disagree with this analysis of Kaminsky's Eighth Amendment rights. Instead, they contend it was objectively reasonable for them to believe their actions were lawful, and that the district court misapplied the law when it neglected to analyze both components of the doctrine. In other words, appellants contend that after deciding the law was clearly established, the court did not determine whether it was objectively reasonable for appellants to believe their conduct was lawful.
 
 
 19
 The district court denied summary judgment because it found genuine issues of fact regarding the quality of each defendant's care of Kaminsky. 737 F.Supp. at 1319. Specifically, it held there were questions regarding whether defendants' conduct violated clearly established legal norms. One issue of fact was whether Dr. Wroblewski recommended immediate hospitalization of Kaminsky on August 21--five days before decedent was actually hospitalized. Another was an unexplained three-month gap in Kaminsky's treatment in the last months of his life. During that time Kaminsky deteriorated dramatically. The district court believed there was a factual issue regarding Kalonick's and Scully's knowledge of decedent's condition and, if they knew of it, whether they failed to take appropriate action. Id. at 1317-18.
 
 
 20
 At his deposition, Dr. Wroblewski stated he told Dr. Rosenblum, the Medical Director at Green Haven, on August 21 that Kaminsky was acutely ill and needed immediate hospitalization. There is evidence that at some point between August 21 and August 25 Kalonick and Scully were made aware of Dr. Wroblewski's recommendation and failed to act on it. Proof was also presented that appellants were aware of Kaminsky's deterioration in his last months and the allegedly inadequate medical care given him during this period, as well as the allegedly inadequate medical treatment provided during the first ten months of his incarceration at Green Haven. Appellants dispute all of these allegations, the establishment of which would seriously undermine their argument that it was objectively reasonable for them to believe their acts lawful. See, e.g., Liscio, 901 F.2d at 276-77; Hathaway, 841 F.2d at 50-51; Gill, 824 F.2d at 195-96.
 
 
 21
 We must determine further whether the district court reached the objective reasonableness component of the qualified immunity defense. Contrary to appellants' contention, the district court did not stop after addressing only the threshold issue of whether the law was clearly established. Rather, finding that there were factual issues as to appellants' conduct, Judge Leisure correctly decided that he could not determine whether it was objectively reasonable for Kalonick and Scully to believe their acts were lawful, because the facts in dispute were relevant to that determination. We also believe the resolution of the objective reasonableness of defendants' actions turns on disputed questions of fact that preclude the granting of summary judgment.
 
 
 22
 Consequently, because a factual finding is essential to resolving the issue of qualified immunity, the denial of appellants' summary judgment motion was not based on a misapprehension or misapplication of law. Inasmuch as there are unresolved disputed questions of fact outstanding, the district court's order is not final. Hence, we lack jurisdiction over the order appealed from and must dismiss the appeal.
 
 CONCLUSION
 
 23
 For the reasons stated, the appeal is therefore dismissed for lack of appellate jurisdiction.