**Edward J. PETERS, Plaintiff,**

v.

**Renee PETERS and Benjamin Trabka, Defendants.**

**Civil Action No. 3:06 CV 343(CFD).**

United States District Court, D. Connecticut.

Feb. 21, 2008.

---

John R. Williams, New Haven, CT, for Plaintiff.

Edward V. Walsh, Thomas M. Murtha, Maher & Murtha, Bridgeport, CT, for Defendants.

### RULING ON MOTION FOR SUMMARY JUDGMENT

CHRISTOPHER F. DRONEY, District Judge.

Plaintiff Edward J. Peters ("Peters") brought this action against Renee Peters ("Renee") and Benjamin Trabka ("Trabka"), pursuant to 42 U.S.C. § 1983, for malicious prosecution in violation of his rights under the Fourth Amendment of the U.S. Constitution. Trabka now moves for summary judgment. For the reasons that follow, Trabka's motion is granted.

### I. Background[1]

Trabka is a detective on the Shelton, Connecticut police force. In March 2003 he served as the primary investigator for all sexual assault and abuse cases in Shelton. On March 26, 2003, Renee Peters called Trabka for information regarding the process of filing a sex abuse complaint involving her seven year old daughter Rachael and Rachael's grandfather, Edward Peters. The same day, Trabka contacted the Department of Children and Families to report the call, and he also scheduled an appointment for Rachael to be forensically interviewed at Yale New Haven Hospital. Trabka observed the interview, which took place on April 4, 2003, through a two-way mirror with audio equipment. Rachael described two separate occasions during which Peters touched her genital area under her clothing and "inside her private part." Trabka asserts that he found Rachael to be truthful and credible during the interview. Several days later, Trabka interviewed Rachael's brother, Kyle, who told Trabka that Rachael had told him their grandfather had touched her genital area while she was playing on the computer at their grandfather's house; Kyle also reported that when he asked Rachael if it could have been an accident, Rachael said no.

On May 16, 2003, Trabka interviewed Peters. He denied ever touching Rachael inappropriately, but he accused Kyle of doing so on three occasions. When Trabka later asked Kyle about these allegations, Kyle denied them, but he stated that on one occasion Peters had accused him of improperly touching Rachael.

On August 6, 2003, Trabka interviewed David Peters ("David"), who is Edward Peters's son and who was Renee's husband at the time. David accused Renee of making up the allegations against his father to hurt him (David) because the couple was going through a difficult divorce. David gave Trabka several documents, including a list of his problems with Renee, family pictures, and a cassette tape of telephone messages from Renee to David, but Trabka concluded that these submissions were irrelevant to his investigation.

Several weeks after speaking with David, Trabka was contacted by Leanne Roberts, a clinician at the Lower Naugatuck Valley Parent Child Resource Center ("PCRC"), via letter. Roberts's letter stated that she had been counseling Rachael at PCRC on a weekly basis since May 2003 and that Rachael's allegations against Peters had been consistent throughout her treatment. Roberts then reported that a man who had identified himself as Edward Daniels had called PCRC and attempted to make claims that

1. The facts are taken from the parties' Local Rule 56(a) statements, summary judgment briefs, and other evidence submitted by the parties. They are undisputed unless otherwise indicated.

Kyle had sexually abused Rachael. During the call, however, "Edward Daniels" admitted he was, in fact, Edward Peters.

Based upon this investigation, Trabka completed an arrest warrant application for Peters that charged him with Sexual Assault in the First Degree, in violation of Conn. Gen.Stat. § 53a70, two counts of Impairing the Morals of a Minor, in violation of Conn. Gen.Stat. § 53–21, and Sexual Assault in the Fourth Degree, in violation of Conn. Gen.Stat. § 53a–73a. A Connecticut Superior Court Judge signed the arrest warrant. On May 23, 2005, however, the charges were nollied by the court based in part on Renee's decision not to allow Rachael to testify.

Peters now claims that Trabka brought the charges against him in violation of his Fourth Amendment rights. Peters argues that Trabka lacked probable cause to seek the arrest warrant because he supplied Trabka with exculpatory information that Trabka improperly refused to consider when making his probable cause determination.[2] Trabka maintains that there was probable cause to seek the arrest warrant and that qualified immunity protects his actions.

## II. Standard of Review

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56; *Anderson v. Liberty Lobby,*

*Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *White v. ABCO Eng'g Corp.,* 221 F.3d 293, 300 (2d Cir.2000). The burden of showing that no genuine factual dispute exists rests upon the moving party. *Carlton v. Mystic Transp., Inc.,* 202 F.3d 129, 133 (2d Cir.2000) (citing *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1223 (2d Cir. 1994)). Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505, and present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.,* 230 F.3d 34, 38 (2d Cir.2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Graham,* 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." *Carlton,* 202 F.3d at 134. "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. *Sologub v. City of New York,* 202 F.3d 175, 178 (2d Cir.2000).

## III. Discussion

█ Under the doctrine of qualified immunity, police officers may not be held

---

**2.** Specifically, Peters claims that he told Trabka (1) that "Kyle had a history of sexual wrongdoings" and that Peters caught him molesting Rachael on three occasions; (2) that David had heard Renee "witness tampering" with Rachael in April of 2003; (3) that it would have been impossible for one of the alleged instances of molestation to occur without Kyle knowing about it; (4) that certain digital photographs and other evidence revealed a time discrepancy between Rachael's recollection of the date upon which certain events occurred, including one of the alleged instances of abuse, and the actual date that those other events occurred; and (5) that Rachael gave Peters a Valentine's Day card shortly before Renee first called Trabka to report the abuse. Plaintiff's Statement of Material Facts, at ¶¶ 4–8.

liable for conduct that "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (citations omitted). The policy underpinnings of this doctrine involve "strik[ing] a balance 'between the need, on one hand, to hold responsible public officials exercising their power in a wholly unjustified manner and, on the other hand, to shield officials responsibly attempting to perform their public duties in good faith from having to explain their actions to the satisfaction of a jury.' " *Locurto v. Safir*, 264 F.3d 154, 162–63 (2d Cir.2001) (quoting *Kaminsky v. Rosenblum*, 929 F.2d 922, 924–25 (2d Cir.1991)). Simply stated, qualified immunity ensures "that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier v. Katz*, 533 U.S. 194, 206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

As the Second Circuit has summarized: A threshold question for triggering the qualified immunity doctrine is whether an official's conduct violated a constitutional right. . . . If so, we then must decide whether qualified immunity attaches. Qualified immunity is warranted if either (1) the official's actions did not violate clearly established law, or (2) even if the actions violated a clearly established law, the official was objectively reasonable in believing in the lawfulness of his actions.

*Connecticut v. Crotty*, 346 F.3d 84, 101–02 (2d Cir.2003) (citations and quotations omitted); *see also Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir.1995); *McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272, 278 (2d Cir.1999).

■ Here, Peters claims that Trabka violated his Fourth Amendment right to be free from malicious prosecution. To prevail on this claim, Peters must show a violation of his rights under the Fourth Amendment and establish the elements of the parallel claim under state law. *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002) (applying elements of state malicious prosecution tort); *Holman v. Cascio*, 390 F.Supp.2d 120, 122 (D.Conn.2005) (same). Under Connecticut law, a plaintiff asserting a malicious prosecution claim must prove the following elements: (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice. *QSP, Inc. v. Aetna Casualty & Surety Co.*, 256 Conn. 343, 360 n. 16, 773 A.2d 906 (2001); *Holman v. Cascio*, 390 F.Supp.2d at 122.

■ The undisputed facts reveal that there is no genuine question of material fact as to whether Trabka had probable cause to seek a warrant for Peters's arrest. "Probable cause to arrest exists when the arresting officer has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.' " *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir.2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996)). Under Conn. Gen.Stat. § 53a–70, "[a] person is guilty of sexual assault in the first degree when such person . . . engages in intercourse[3]

---

**3.** Conn. Gen.Stat. § 53a–65 defines this term as follows:

'Sexual intercourse' means vaginal intercourse, anal intercourse, fellatio or cunnilingus between persons regardless of sex.

with another person and such other person is under thirteen years of age and the actor is more than two years older than such person." Under Conn. Gen.Stat. § 53a–73a, "[a] person is guilty of sexual assault in the fourth degree when ... [s]uch person intentionally subjects another person to sexual contact who is ... under fifteen years of age." Under Conn. Gen.Stat. § 53–21, a person is guilty of impairing the morals of a minor if he "has contact with the intimate parts ... of a child under the age of sixteen." Peters does not dispute that at the time Trabka sought the warrant, he knew Rachael had described, in detail, two incidents of molestation during her forensic interview at Yale New Haven Hospital, that she had independently told her brother about one of these incidents, and that she had insisted to her brother that Peters's conduct was not accidental. It is also uncontested that at the time Trabka sought the arrest warrant, he believed that Peters, while using a false identity, had attempted to report Kyle for abusing Rachael. In light of these undisputed facts, Peters submitted no evidence that raises a genuine issue of material fact as to whether Trabka had probable cause to seek Peters's arrest.[4] The facts known to Trabka at the time he sought the arrest warrant sufficiently established probable cause for the crimes with which Peters was charged.

 Furthermore, Trabka is entitled to qualified immunity. "[T]he issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause, and a plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden." *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir.1991) (citation omitted). Based upon this presumption, where an arrest warrant has issued, a police officer is immune from liability unless, "on an objective basis, no reasonably competent officer could have concluded that a warrant should issue." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). To overcome this presumption, the plaintiff must "make a 'substantial preliminary showing' " that the warrant affidavit either included false information " 'necessary to the finding of probable cause' " or omitted information "critical to the probable cause determination." *Golino,* 950 F.2d at 870 (quoting *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)).

Peters did not put forth any material evidence from which a reasonable juror could conclude that Trabka's warrant affidavit either contained false information that would have been necessary for a finding of probable cause, or that it omitted exculpatory information that would have negated such a finding. The Second Circuit has explained that the presumption of qualified immunity must be upheld "if, after crossing out any allegedly false information and supplying any omitted facts, the [officer's] 'corrected affidavit' would have supported a finding of probable cause." *Velardi v. Walsh,* 40 F.3d 569, 573

---

Its meaning is limited to persons not married to each other. Penetration, however slight, is sufficient to complete vaginal intercourse, anal intercourse or fellatio and does not require emission of semen. Penetration may be committed by an object manipulated by the actor into the genital or anal opening of the victim's body.

4. Peters's alleged exculpatory evidence, which he claims Trabka improperly ignored in assessing probable cause, fails to raise a genuine issue of material fact as to whether there was probable cause to seek his arrest because it is not inconsistent with Peters having molested Rachael.

(2d Cir.1994); *see also Escalera*, 361 F.3d at 744–45 (describing corrected affidavits doctrine). Under this "corrected affidavits" approach, however, Peters did not present any omitted material evidence that would have negated a finding of probable cause.[5]

 Furthermore, even if Trabka's investigation did not establish probable cause, there was at least "arguable probable cause." *Escalera*, 361 F.3d at 743. "[T]he analytically distinct test for qualified immunity is more favorable to the officers than the one for probable cause; 'arguable probable cause' will suffice to confer qualified immunity for the arrest." *Id.; Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir.2002) ("[I]n situations where an officer may have reasonably but mistakenly concluded that probable cause existed, the officer is nonetheless entitled to qualified immunity."). Here, the facts known to Trabka at the time he sought the warrant provided at least a reasonable basis for his conclusion that probable cause existed. Accordingly, Trabka would be entitled to qualified immunity even if Peters could establish that Trabka's probable cause determination was mistaken. *See*

*Caldarola*, 298 F.3d at 162. In light of this, summary judgment is properly granted to Trabka.

## IV. Conclusion

For the reasons given above, Trabka's motion for summary judgment [docket # 23] is granted. As it is undisputed that Renee Peters is not a state actor who could be sued under 42 U.S.C. § 1983, the clerk is directed to close this case.

SO ORDERED.

**5.** As explained above in footnotes 2 and 4, Peters's purportedly exculpatory evidence consists primarily of unsubstantiated attacks on the credibility of Rachael and Kyle, and it is not inconsistent with Peters having molested Rachael. In particular, Peters emphasizes that some time prior to Trabka's submitting the arrest warrant application, Trabka told him that he believed one of the incidents of alleged abuse took place while Peters, Rachael, and Kyle were sitting on Peters's motorcycle. Peters argues that he told Trabka that the seat was too small for him to molest Rachael without Kyle being "aware of what was going on" if all three of them had been sitting on it together. Plaintiff's Statement of Material Facts, at ¶ 7. Although the size of the seat is relevant to probable cause, it is not determinative in light of Rachael's description that Kyle was present at the time of the incident but did not see it happen. Additionally,

Peters asserts that Rachael's recollection of the incident is unreliable because she described the incident as having occurred in the springtime, on a day that she had shot a pellet gun with Peters and Kyle; Peters claims that she actually shot the pellet gun on October 27, 2002, which he had recently purchased, rather than in the spring. Even if this were true, it does not negate probable cause in light of the other evidence supporting Rachael's truthfulness, such as Trabka's own conclusions after observing her forensic interview at Yale New Haven Hospital, the representation from her PCRC counselor that her allegations against Peters had been consistent throughout her treatment, and the other facts Trabka learned during his investigation. Since Peters's evidence falls short of that needed to fully negate probable cause, it is insufficient to overcome the warrant's presumptive validity.