II. Deprivation of Adequate Medical Care
Plaintiff's claim arises from defendants' alleged "deliberate indifference to [his] serious medical needs." Opp'n at 7. Such a claim is subject to a two-pronged analysis. First, an objective prong of the test requires that "the alleged deprivation of adequate medical care must be 'sufficiently serious.' " Salahuddin v. Goord , 467 F.3d 263, 279 (2d Cir. 2006) (quoting Farmer v. Brennan , 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ).[2] Second, a subjective prong of the test requires plaintiff to show that defendants "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the *188 condition posed to [him] even though [they] knew, or should have known, that the condition posed an excessive risk to health or safety." Darnell , 849 F.3d at 35. The Court examines these prongs sequentially.
a. Objective Prong
The objective prong of the inquiry is itself divided into two inquiries. "The first inquiry is whether the prisoner was actually deprived of adequate medical care." Salahuddin , 467 F.3d at 279. The second inquiry "asks whether the inadequacy in medical care [was] sufficiently serious." Id. at 280.
i. Actual Deprivation
With regard to whether plaintiff suffered an actual deprivation, "the prison official's duty is only to provide reasonable care." Id. at 279 (citing Farmer , 511 U.S. at 844-47, 114 S.Ct. 1970 ). "[P]rison officials who act reasonably ... cannot be found liable," Farmer , 511 U.S. at 845, 114 S.Ct. 1970, but "failing 'to take reasonable measures' in response to a medical condition can lead to liability," Salahuddin , 467 F.3d at 280 (quoting Farmer , 511 U.S. at 847, 114 S.Ct. 1970 ). Therefore, the issue is whether defendants provided reasonable care here, a question that is disputed by the parties' conflicting expert reports.
Plaintiff claims that he was first deprived of a constitutionally protected right when defendants failed to refer him to a specialist between April 8, 2013 and May 7, 2013. As noted above, Singletary has not shown that Dr. Geraci had sufficient personal involvement to face liability, given that Dr. Geraci never treated him during this period of time. Although Dr. Russo may have been personally involved, insofar as he treated Singletary and waited one month before referring him to a specialist, this does not constitute a deprivation of care. Each party relies on a single expert report opining as to whether this failure constituted a deprivation of care. Singletary's expert, Dr. Stuart I. Finkel, makes only the general claim that "[a]s [Singletary's] treating physician, it was [Dr. Russo's] obligation to ensure ... that his patient was referred for necessary and appropriate medical care, including timely consultations with the appropriate specialist(s)." Decl. of Stuart I. Finkel at 6 (ECF No. 73-31, at 9) ("Finkel Decl."). Contrarily, defendants' expert, Dr. Frank T. Sconzo, speaks specifically to the one-month delay, from April to May, in referring Singletary to a specialist. Dr. Sconzo opines that after Singletary's JMU visit, in April 2013, "no urgent treatment [was] needed." Decl. of Frank. T. Sconzo at 1 (ECF No. 73-49, at 1) ("Sconzo Decl."). In light of the parties' sole reliance on these reports, a reasonable jury could not find that a one-month delay in referring Singletary to a specialist constituted a deprivation of adequate medical care. Although Dr. Finkel explained that Dr. Russo was bound to refer Singletary to a specialist in a timely fashion when necessary, he did not conclude that Singletary needed urgent care as of April 8, 2013 or that a one-month delay was a failing of constitutional magnitude. Plaintiff has not produced evidence to meet defendants' showing, and defendants are thus entitled to summary judgment with respect to this alleged deprivation.
Singletary's next alleged deprivation arises from defendants' failure to ensure that he saw a specialist after Dr. Russo made a referral marked "urgent." Singletary, as mentioned earlier, has adequately demonstrated the personal involvement of only Dr. Russo, given that Dr. Geraci played only a supervisory role in the referral. Neither the briefing nor the *189 expert reports speak directly to this whether Dr. Russo's failure constituted a deprivation of adequate medical care. However, courts in this circuit have held that failure to see that a detainee receives a prescribed course of treatment, resulting in delay, may constitute a constitutional deprivation. See, e.g. , Price , 697 F.Supp.2d at 361-62 (holding that delay in arranging a kidney transplant test can constitute deliberate indifference); Lloyd v. Lee , 570 F.Supp.2d 556, 569 (S.D.N.Y. 2008) ("A reasonable jury could infer deliberate indifference from the failure of the doctors to take further steps to see that [plaintiff] was given an MRI [after those doctors ordered the test]."). Notably, in Lloyd , the court denied summary judgment on a deliberate indifference claim, even though the defendants had submitted and re-submitted MRI request forms. Lloyd , 570 F.Supp.2d at 569. Therefore, although Dr. Russo submitted a referral to an outside specialist and marked it urgent, this is not a complete defense. Consequently, he is not entitled to summary judgment on the ground that no actual deprivation had occurred. This claim, however, is stranded there since, for reasons discussed later, Singletary falters at the subjective prong and summary judgment for defendants is awarded on that basis. See infra Section II(b).
The third purported constitutional violation occurred when Dr. Russo and Dr. Geraci failed to follow up with Dr. Ruffo and to implement his recommendations. For plaintiff, Dr. Finkel opines that this constituted a deprivation. Finkel Decl. at 7. Defendants' expert did not speak directly to this issue, although he alluded to an "appropriate specialist consult." Sconzo Decl. at 2. With only this minimal discussion and conflicting expert opinions, the Court cannot grant summary judgment on this ground. Moreover, "[f]ailure to heed a physician's recommendation ... may in some circumstances constitute deliberate indifference on the part of prison officials." Demata v. N.Y.S. Corr. Dept. of Health Servs. , 198 F.3d 233, 1999 WL 753142, at *6 (2d Cir. Sept. 17, 1999) (unpublished table decision) (citing Kaminsky v. Rosenblum , 929 F.2d 922, 927 (2d Cir. 1991) ). Price is particularly instructive with respect to this claim. There, the court identified deliberate indifference when, after doctors referred a detainee for an x-ray study, they failed to follow up on the study and thus failed to learn that additional tests were needed. Price , 697 F.Supp.2d at 364. Failing to follow up on Singletary's referral to Dr. Ruffo and consequently failing to implement his recommendations is closely analogous, and a reasonable jury could find it to be an actual deprivation.
Next, Singletary alleges that he was denied adequate care when defendants failed to respond to two medical grievance forms. However, he has made no showing that Dr. Russo saw these forms or was responsible for responding to such forms. Absent personal involvement, there can be no § 1983 liability, so Dr. Russo is entitled to summary judgment with respect to this claim. Dr. Geraci unquestionably saw the second medical grievance form, and there is a dispute as to whether he saw the first form. Therefore, there is a triable issue as to Dr. Geraci's personal involvement. There is a further triable issue as to whether his actions constituted a deprivation of adequate medical care. Dr. Finkel opines explicitly that Dr. Geraci's referral of Singletary to sick call was an inadequate response to the second grievance form, see Finkel Decl. at 7, whereas Dr. Sconzo does not directly address this incident. In Price , failure to respond to repeated complaints was held to be a form of deliberate indifference. Price , 697 F.Supp.2d at 363.
*190 Finally, plaintiff alleges that an actual deprivation occurred when defendants failed to prepare a complete medical form upon his transfer from SCCF to state custody. Defendants first argue that there is no right to the completion of a medical information form upon transfer to a different custodial authority. Defs.' Mem. Supp. at 26 (ECF No. 29-30 ). However, although they have declined to impose liability, given the lack of resulting harm, courts in this circuit have several times recognized that lapses in recordkeeping could constitute deprivations of adequate medical care. See, e.g. , Davis v. McCready , No. 14-cv-6405 (GHW), 2017 WL 627454, at *3 n.3 (S.D.N.Y. Feb. 15, 2017) ("[L]apses in proper medical record-keeping can support a deliberate indifference claim under the proper circumstances ...."); Thomas v. Tisch , No. 08-cv-0400 (JFB), 2009 WL 701009, at *7, at *18-19 (E.D.N.Y. Mar. 11, 2009) ("[T]he Court declines to conclude, as a matter of law, ... that 'not forwarding the plaintiff's medical records' or medication ... cannot plausibly rise to the level of a 'deliberate indifference' ...."). Furthermore, defendants identify no law requiring a constitutional right to be defined as specifically as the right to the completion of a medical information form. A detainee's right to adequate medical care has been indisputably established, see Estelle v. Gamble , 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), and if failing to complete a form constitutes a deprivation of such care, then a constitutional right has been violated.
That said, the personal involvement requirement still applies. There is no indication that these defendants were involved with the completion of this form, which was prepared by Nurse Paula Mecagni. Plaintiff's expert, however, suggests that each defendants' alleged failures to follow up on Singletary's condition led to the incompleteness of the transfer form. Finkel Decl. at 7.[3] Therefore, there appears to be a triable issue as to whether a deprivation occurred. But, as to these issues, and all those issues found triable up to this point, they are immaterial if defendants succeed on another issue that is essential to Singletary's claims. Failure of a claimant to survive summary judgment on a matter essential to his claim renders all other issues immaterial. See Anderson , 477 U.S. at 248, 106 S.Ct. 2505 ; Celotex Corp. , 477 U.S. at 323, 106 S.Ct. 2548. As will be shown below, that is Singletary's fate on all of his claims brought against Dr. Geraci and Dr. Russo.
ii. Serious Deprivation
In assessing the seriousness of a deprivation, another showing required of a claimant that is essential to relief, the question is "what harm, if any, the inadequacy has caused or will likely cause the prisoner." Salahuddin , 467 F.3d at 280 (citing Helling v. McKinney , 509 U.S. 25, 32-33, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993) ). A prisoner's medical needs are *191 "considered serious if the failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain." Estelle , 429 U.S. at 104, 97 S.Ct. 285. "Objectively, the alleged deprivation must be 'sufficiently serious,' in the sense that 'a condition of urgency, one that may produce death, degeneration, or extreme pain' exists." Hathaway v. Coughlin , 99 F.3d 550, 553 (2d Cir. 1996) (quoting Hathaway v. Coughlin , 37 F.3d 63, 64 (2d Cir. 1994) ). The Court now considers the question of seriousness with respect to those claims that have, thus far, survived summary judgment: Dr. Russo's failure to follow up with Dr. Ruffo, Dr. Geraci's failure to respond to medical grievance forms, and defendants' failure to ensure the completion of a medical transfer form.
When a prisoner challenges "a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment." Smith v. Carpenter , 316 F.3d 178, 185 (2d Cir. 2003). Conversely, "when the prisoner alleges that prison officials have failed to provide general treatment for his medical condition," a court must focus on the harm of the "underlying 'serious medical condition.' " Id. at 185-86 (citing Chance v. Armstrong , 143 F.3d 698, 702 (2d Cir. 1998) ). Here, plaintiff was provided some treatment for his ulcerative colitis. It is undisputed that plaintiff was seen at the JMU several times and received medications for his condition, except when he missed them on the days of his trial. Moreover, plaintiff ultimately saw a specialist, even though his visit was untimely. Therefore, it is not the case that "prison officials ... failed to provide general treatment" but rather that plaintiff suffered "a temporary delay or interruption in the provision of otherwise adequate medical treatment." See id. As a result, the Court must analyze "the particular risk of harm faced by [plaintiff] due to the challenged deprivation of care, rather than the severity of [his] underlying medical condition." Id. at 186.
Nonetheless, although this standard is less favorable to Singletary than the alternative, there is at least a triable issue as to whether Singletary suffered a sufficiently serious deprivation. Singletary unquestionably suffered a painful condition for several months following the alleged onset of the constitutional violation. The undisputed facts do not settle whether prompter medical treatment would have avoided this pain. Although the colonoscopy that was ultimately conducted found Singletary's colitis to be in remission, the disease goes in cycles of activity and remission, and an earlier colonoscopy, performed while Singletary was suffering a flare-up, might have led to medical changes that could have alleviated the condition. The same uncertainty exists with regard to the implementation by JMU of the specialist's recommendations. Although causation is unclear, because these disputed factual questions require medical expertise, summary judgment on this ground is not appropriate. Although Dr. Sconzo opined that the alleged inadequacies did not result in "permanent worsening of the patient UC," Sconzo Decl. at 2, he did not dispute that Singletary suffered significant pain due to his uncontrolled condition, even if the condition did not permanently worsen. Therefore, Singletary has adequately established harm at this stage.
Notwithstanding that finding, though, summary judgment is warranted on this ground with respect to plaintiff's last claim, regarding the medical transfer form. Singletary has not produced any evidence indicating that he suffered harm as a result of the incomplete form. In the *192 complaint, Singletary alleged that, upon being transferred into the custody of DOCS, he was told that the transferee facility did not stock his medication, Third Am. Compl. ¶ 35, with the apparent implication that Singletary did not receive a travel supply of his prescribed medication. However, discovery did not yield evidence to support this allegation, and the allegation is conspicuously absent from plaintiff's 56.1 counterstatement. See Pl.'s 56.1 ¶¶ 79-83 (noting the incompleteness of the transfer form but failing to reference any adverse consequences). "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading ... but must set forth specific facts showing that there is a genuine issue for trial.' " Anderson , 477 U.S. at 248, 106 S.Ct. 2505 (alteration in original) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co. , 391 U.S. 253, 288, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968) ). At this point, Singletary rests only on the bare allegations of the complaint to support the claim that the inaccurate medical transfer form led to a serious deprivation, entitling defendants to summary judgment.
Dr. Finkel asserts that the incompleteness of the transfer form "delay[ed] [Singletary's] receipt of appropriate evaluation and treatment," Finkel Decl. at 7, but without a factual basis in the record as to such delay, and there is none, Dr. Finkel's assertion is not a valid expert opinion but, rather, speculation - an inappropriate substitute for facts. Without such facts of record, not only is there no basis for Dr. Finkel's expert opinion on this score, there is no evidentiary basis for a reasonable jury to find that the incompleteness of the form caused harm to plaintiff. As a result, defendants are entitled to summary judgment on this claim.
b. Subjective Prong
Under the second prong of the deliberate indifference analysis, the Court must consider whether defendants "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though [they] knew, or should have known, that the condition posed an excessive risk to health or safety." Darnell , 849 F.3d at 35. Under this standard, plaintiff "must prove that [defendants] acted intentionally or recklessly, and not merely negligently." Id. at 36. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle , 429 U.S. at 106, 97 S.Ct. 285. Although the third amended complaint avers that "[d]efendants' intentional failure to provide appropriate care manifests deliberate indifference," Third Am. Compl. ¶ 40, plaintiff has adduced no evidence to this effect and does not refer to intentional misconduct in his brief.
As a consequence, the relevant mens rea is recklessness, which, for present purposes, "more closely resembles recklessness as the term is used in the civil context" and "does not require a defendant to be subjectively aware of the harm resulting from his acts or omissions," Feliciano v. Anderson , No. 15-cv-4106 (LTS) (JLC), 2017 WL 1189747, at *13 (S.D.N.Y. Mar. 30, 2017) (citing Darnell , 849 F.3d at 32 ); accord Kingsley v. Hendrickson , --- U.S. ----, 135 S.Ct. 2466, 2472-73, 192 L.Ed.2d 416 (2015). Under this standard, "a defendant possesses the requisite mens rea when he acts or fails to act under circumstances in which he knew, or should have known, that a substantial risk of serious harm to the pretrial detainee would occur." Feliciano , 2017 WL 1189747, at *13 (citing Darnell , 849 F.3d at 35 ). Here, each defendant was aware that Singletary suffered *193 from ulcerative colitis. See, e.g. , Geraci Tr. at 144:11-21; Russo Tr. at 51:14-17. Moreover, each defendant was aware of the flare-up of Singletary's condition. Defs.' 56.1 ¶ 7; 20. The Court now turns to the issue of whether defendants' conduct amounted to recklessness with respect to each remaining claim. The arguments of the parties come to a head here.
The Court's analysis begins with Dr. Russo, who, as discussed earlier, actually deprived Singletary of care but only insofar as he did not ensure that Singletary saw a specialist after being referred and did not follow up with the specialist or implement his recommendations. However, there is no indication in the record that Dr. Russo was aware that the appointment with Dr. Ruffo had not been scheduled promptly. Although, in certain circumstances, failure to follow up may constitute deliberate indifference, cf., e.g. , Lloyd , 570 F.Supp.2d at 569 (holding that failure to follow up on an MRI request could be deliberate indifference), the present case is distinguishable from Lloyd and Price . In Lloyd , the plaintiff repeatedly complained to the physician who had referred him for an MRI during the nine months that passed before the MRI was scheduled. Id. at 562-63, 569. Similarly, the plaintiff in Price lodged repeated complaints about his doctor's failure to schedule a prescribed x-ray exam. Price , 697 F.Supp.2d at 363. These complaints sufficed to put the Lloyd and Price defendants on actual or constructive notice of the immediate medical needs of the respective plaintiffs.
Here, there is no indication that Singletary ever asked Dr. Russo whether an appointment with a specialist had been scheduled. Moreover, there is no evidence that Dr. Russo otherwise learned that the appointment had not been arranged. Absent any indication that the appointment had not been scheduled, Dr. Russo could not have been expected to know that a risk of substantial harm existed. Plaintiff was required to show that Dr. Russo "acted with a mental state more blameworthy than negligence," Lloyd , 570 F.Supp.2d at 567 (citing Hernandez v. Keane , 341 F.3d 137, 144 (2d Cir. 2003) ), and the record does not reveal any such culpability. Dr. Finkel opined that Dr. Russo was obliged to ensure that the specialist appointment was scheduled and that Dr. Russo was aware of the seriousness of plaintiff's condition. Finkel Decl. at 6-7. However, Dr. Finkel's report in no way suggests that Dr. Russo was aware that the appointment had not been scheduled or that he should have been aware of what was apparently a clerical error. Absent actual awareness or a duty to monitor scheduling matters, even when a patient does not complain, Dr. Russo was not reckless and is entitled to summary judgment.
The next issue centers on Dr. Russo's mens rea with respect to his failure to implement Dr. Ruffo's recommendations. Here, Dr. Russo claimed that he was not aware of Dr. Ruffo's recommendations. See Russo Tr. at 68:13-15. Although he admitted that it was his responsibility to follow up with Dr. Ruffo, id. at 69:6-9, falling below the medical standard of care or neglecting his vocational duties does not transform Dr. Russo's omission into a constitutional violation, see Estelle , 429 U.S. at 106, 97 S.Ct. 285 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Even assuming, without deciding, that Dr. Russo was professionally obligated to follow up with Dr. Ruffo and was negligent for failing to do so, it does not follow that he was reckless or deliberately indifferent *194 to Singletary's medical needs.[4] Furthermore, no evidence suggests that Dr. Russo was aware of either the medical grievance forms or the medical transfer form. Nor does the record reveal that he had a duty to be aware of such forms. With respect to the transfer form, the record does not even indicate that Dr. Russo knew Singletary was to be transferred. Therefore, plaintiff has not adequately established Dr. Russo's mens rea , and summary judgment is appropriate on this claim too.
As for Dr. Geraci, clearly, he was aware of the flare-up of plaintiff's ulcerative colitis when he received and made a notation on Singletary's second medical grievance form. See Geraci Tr. at 86:2-87:12. Nevertheless, that does not mean that Dr. Geraci was reckless. When confronted with plaintiff's second medical grievance form, Dr. Geraci placed Singletary on sick call. Even if, as Dr. Finkel contends, it was professionally irresponsible for Dr. Geraci not to follow up on the referral to sick call, nothing suggests that Dr. Geraci was reckless. In support of his claim, plaintiff cites Grimmett v. Corizon Medical Associates of New York , No. 15-cv-7351 (JPO) (SN), 2017 WL 2274485 (S.D.N.Y. May 24, 2017). In Grimmett , the court found that a plaintiff had sufficiently pled recklessness when he alleged that a doctor had omitted facts from his medical records and utterly refused to respond to numerous medical grievances. Id. at *4. Here, there is no indication that Dr. Geraci deliberately prevented Singletary from receiving care, and by plaintiff's admission, Dr. Geraci did respond to Singletary's second medical grievance by placing him on sick call. Absent any indication that Dr. Geraci was reckless, as opposed to merely negligent, in failing to ensure that Singletary was eventually seen by a doctor, plaintiff's claim cannot, and does not, survive summary judgment.
Furthermore, as with Dr. Russo, there is no indication that Dr. Geraci was aware of the medical transfer form or had a duty to monitor the completion of such a form. The Court, moreover, cannot infer such a duty from Dr. Geraci's title alone. Therefore, and since § 1983 does not otherwise admit of the imposition of supervisory liability, defendants are entitled to summary judgment on this claim as well.
Conclusion
For the foregoing reasons, defendants' motion for summary judgment is granted in its entirety.
The Court certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Memorandum and Order would not be taken in good faith and, therefore, in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States , 369 U.S. 438, 444-45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).
*195 The Clerk of Court is directed to enter judgment accordingly and to close this case.
So Ordered.

Salahuddin was decided under the Eighth Amendment, rather than the Fourteenth Amendment, but the first prong of the deliberate indifference inquiry is the same under both amendments; only the second prong, focusing on mens rea , differs. See Darnell , 849 F.3d at 35-36.

Plaintiff's expert contends that defendants were reckless insofar as they did not ensure the complete and accurate transfer of Singletary's medical records. He does not refer to the specifics of the DOCS form that was completed but rather appears to believe that the doctors were under generally applicable professional duties upon the transfer of a patient. However, although this framing of Dr. Finkel's opinion might overcome defendants' argument that they are not liable because they were not involved in completing the form, it would not overcome the issue that the record does not reveal that defendants were even aware that Singletary was being transferred. Plaintiff does not contend that defendants were under a duty to monitor his whereabouts. Therefore, if they were unaware of his pending transfer, they cannot be liable for failure to transmit his medical records upon said transfer. This issue is discussed further below, with respect to the mens rea prong.

Plaintiff cites Hathaway 's holding that a "jury could infer deliberate indifference from the fact that [defendants] knew the extent of [plaintiff's] pain, knew that the course of treatment was largely ineffective, and declined to do anything more to attempt to improve [plaintiff's] situation," 37 F.3d at 68. However, as in Lloyd and Price , defendants' knowledge in Hathaway was based on a series of constant complaints. Id. The court noted that Hathaway was "not a case where a general practitioner merely referred a patient to a specialist and had limited subsequent contact with that patient." Id. But, plainly, Singletary presents just such a case. Unlike the doctor in Hathaway , who did not refer the plaintiff to a specialist until after the lawsuit was filed, id. , and consequently remained the plaintiff's primary physician, Dr. Russo referred Singletary to a specialist voluntarily, and he did not continue to provide care after Singletary saw Dr. Ruffo. Dr. Russo was negligent, at worst, given his limited contact with Singletary following the referral.